**UNITED STATES of America,**
**Appellee,**

v.

**UPPER POTOMAC PROPERTIES COR-**
**PORATION et al., Appellants.**

**No. 15106.**

United States Court of Appeals,
Fourth Circuit.

Argued April 6, 1971.

Decided Sept. 29, 1971.

914

Philip O. Foard, Baltimore, Md. (George W. White, Jr., and Buckmaster, White, Mindel & Clarke, Baltimore, Md., on brief), for appellants.

Peter R. Steenland, Atty., Dept. of Justice (Shiro Kashiwa, Asst. Atty. Gen., Edmund B. Clark, Anthony C. Liotta, Philip M. Zeidner, Attys., Dept. of Justice, and George Beall, U. S. Atty., on brief), for appellee.

Before BOREMAN, BRYAN and CRAVEN, Circuit Judges.

CRAVEN, Circuit Judge:

This is an appeal from a judgment entered on a jury verdict in the United States District Court for the District of Maryland, awarding the defendants $315,000.00 as compensation for the taking by the United States of over 2,060 acres of coal mining property. It was

agreed before trial that the highest and best use of the land was for coal mining purposes, and at the trial the testimony of all witnesses was directed to the value of the property for such purposes. The questions presented us are these: (1) whether the property should be valued as of the date of the trial, as defendants contend, or as of the date of the filing of the Order for Delivery of Possession, as held by the district court; (2) whether the district judge erred in admitting into evidence testimony concerning the sale of a piece of coal mining property to the lessee of all the mineral rights to the property; and (3) whether it was error to charge the jury that if they found certain sales relied upon by the government's expert witness to be comparable, they were the best evidence of value, but not the only evidence to be considered.

For reasons set out below we conclude that the assignments of error are without merit and affirm the judgment below.

This action was commenced on April 17, 1968, when the government filed a Complaint and a Notice of Condemnation according to 33 U.S.C. §§ 591, 594.[1A] On April 18, 1968, the district court entered ex parte an Order for Delivery of Possession. On May 14, 1968, a stipulation between the parties was filed.

■■ The defendants argue that since the government did not file a declaration of taking under 40 U.S.C. §§ 258a–258e, nor take physical possession at any time before the trial, the value of the land is to be ascertained as of the date of the trial. However, under 33 U.S.C. § 594 the United States is entitled to the right of immediate possession provided only that subsequent compensation is assured.[1] When it proceeds under this title, as was done here, the United States is not required to file a Declaration of Taking under 40 U.S.C. §§ 258a–258e unless it elects to do so. United States v. Catlin, 142 F.2d 781 (7th Cir. 1944). We agree with the district court that the time of taking was on April 18, 1968, the date of the Order for Delivery of Possession. While it is true that the United States did not have actual physical possession of the land in question on that date, the stipulation of May 14, 1968, between the parties indicates that the rights of the defendants to the use of the land was limited in such a way as to be inconsistent with anything except a possessory right in the government with certain rights reserved to the defendants.[2] Our conclusion on this issue is

1A. The lands taken were to be used for the building of the Bloomington Dam and Reservoir on the North Branch of the Potomac River in Garrett County, Maryland.

1. Section 594 reads in relevant part as follows:
   Whenever the Secretary of the Army, in pursuance of authority conferred on him by law, causes proceedings to be instituted in the name of the United States for the acquirement by condemnation of any lands, easements, or rights of way needed for a work of river and harbor improvements duly authorized by Congress, the United States, upon the filing of the petition in any such proceedings, shall have the right to take immediate possession of said lands, easements, or rights of way, to the extent of the interest to be acquired, and proceed with such public works thereon as have been authorized by Congress: Provided, That certain and adequate provision shall have been made for the payment of just compensation to the party or parties entitled thereto, either by previous appropriation by the United States or by the deposit of moneys or other form of security in such amount and form as shall be approved by the court in which such proceedings shall be instituted. * * *

2. For example, the stipulation provides that:
   Defendants further agree that no strip mining, cast off of overburden or disturbance of the earth for any reason is permitted by them except as stated below. Defendants may conduct mining operations on the property subject to following conditions:
   After conditions relative to strip mining in certain areas were laid out, the stipulation continued:
   In the event that the District Engineer should determine that the continued use and occupancy of the areas designated

reinforced by paragraph 5 of the Stipulation,[3] the proper interpretation of which we think is provided by the district court. "Only if the land had previously been taken by the United States [*i. e.*, at the date of the Stipulation], but defendants were nevertheless permitted to use some of it, and remove coal, would it be necessary to provide specifically for reflecting, 'the diminution in value * * * by reason [of removal] of the coal or other materials.'" R. 88–93, App. at 19.

We think the district judge did not abuse his discretion when he allowed the jury to consider the price paid for the coal mining operation immediately adjacent to the property in question on the theory that comparable sales. are the best evidence of value. The government appraisers testified that they took this price into consideration as a comparable sale in arriving at their figure of what the fair market value of the property in question would be. This sale, entered into in 1967 (hereinafter referred to as the Johnstown sale), was of about 5,000 acres by the Johnstown Coal Company to Douglas Coal Company for $250,000. Douglas Coal Company already had a lease on the property under which they could mine the coal on the property for 20 years, with an option to renew for ten years or until the coal was exhausted. As royalty under their lease, Douglas was to pay a per ton price which varied depending on the mining method used, but which was to be at least $625 per month.

The defendants contend that since this lease existed, evidence of the subsequent sale should have been excluded because no one other than Douglas could have bought the land and used it for coal mining. Implicit in this argument is the supposition that since Douglas had the lease,

it could not have rationally paid the same price for the freehold as it would have if the lease had not existed, and therefore the purchase price in the Johnstown sale could not have reflected the fair market value of the freehold.

It is clear that the term fair market value, with reference to the land in question, is the complete freehold interest. However, it does not follow that the fair market value of the property involved in the Johnstown sale must be greater than the price paid for the land subject to the lease. This depends entirely on the terms of the lease. While it is true that only Douglas could have bought the land and used it for coal mining, whether or not it would pay more or less than the fair market value of the land would depend upon the terms of the lease.

There was conflicting testimony when evidence of this sale was first introduced whether the government appraisers knew the terms of the lease when they arrived at their conclusions as to fair market value of the property in question. However, there was also evidence that the government appraisers considered the lease to be a "fair market" lease (App. 287) and that they had concluded from conversations with the principals to the Johnstown sale that the sale was for the fair market value of the land.

If this testimony is taken as true, as it must be here, there is no reason to believe that Douglas would not have paid the value of the land as it would have been without the lease. If the royalty payments were more than the fair rental value of the land, Johnstown would have no reason to sell and the lease would actually enhance the value of the freehold. If the royalty payments had been less than the fair rental value, it is true that the freehold interest would be less valu-

herein constitutes an interference with protect purposes the Defendants hereby agree to cease its operations immediately upon notice by the United States Army District Engineer to said effect.

3. Defendants further agree that the diminution in the value of the land described in

paragraph 3 above by reason of removal of coal or other materials shall be reflected in the just compensation as determined by judicial process or by stipulated agreement between the plaintiff and defendants.

able with the lease than without it. But if the royalty payments reflect the fair rental value in 1967, then it would seem that the lease neither added nor detracted from the value of the land.

There is testimony which would support a conclusion that the lease in question provided for royalty payments below the fair rental value in 1967, in which case the sale price could well have been less than the fair market value of the land, since the leasehold would have value. However, there is also adequate testimony to support the conclusion that the lease in question in the Johnstown sale properly reflected the fair rental value of the land in 1967, in which case the lease could properly be disregarded when arriving at a conclusion as to fair market value of the freehold, as one of the government appraisers testified he did. App. at 261. Allowing the jury to consider whether the sale price of the Johnstown property was a comparable sale was clearly within the sound discretion of the district judge; indeed, it would have been error to exclude it for federal courts favor "a broad rule of admissibility * * * of all evidence which is relevant and material to the issues in controversy, unless there is a sound and practical reason for excluding it. * * *" United States v. Sowards, 370 F.2d 87, 90 (10th Cir. 1966).

■ The defendant property owners next contend that it was error to instruct the jury, preliminarily and at the close of the case, that comparable sales are the best evidence of value. In addition, the property owners seem to argue that it was also error to allow the jury to consider the prior sales as evidence bearing on the value of the property in question because another method of valuation is generally used by members of the coal mining industry when they consider whether to buy a piece of coal bearing property. This method, termed the discounted royalty rate method, uses the product of the amount of recoverable coal in place times the price per ton of such coal, discounted over time. Defendants urge that because this method of valuation is almost universally used by people in the coal mining business any other method of valuation is inadmissible under exclusionary rules of evidence. We disagree. That it may be an acceptable method does not serve to exclude otherwise competent evidence relating to valuation. For a discussion of whether this method is an acceptable method of valuation or a deviation from the proper standard of value, see United States v. Sowards, 370 F.2d 87 (10th Cir. 1966), and cases cited.

■ The main thrust of defendants' appeal is that the district judge committed error by instructing the jury that comparable sales are the best evidence of value. The property owners claim that the effect of the trial judge's instructions was to preclude the jury from even considering the method of valuation used in the industry, and that the jury thought that the only issue to be determined was whether or not there were comparable sales. A reading of the instructions given the jury by the trial judge, however, does not support the defendants' contention.

On numerous occasions the trial judge repeated his basic instructions that " * * * if there are comparable sales, they are the best evidence, but they are not to be taken solely and exclusively, they are to be taken in connection with all of these other things." App. 1147. *See also* App. 1148–1150. Throughout his instructions, the trial judge emphasized that comparable sales, if the jury found them in fact to be comparable, are not the only evidence of value which the jury was to consider. In addition, the trial judge specifically instructed the jury that they could also consider the price per ton of coal and the royalty rate in arriving at the amount to be paid defendants. App. 1150. We think it is clear that the trial judge's instructions did not limit the jury in the manner that the defendants contend.

The defendants further contend that the trial judge labored under the erroneous impression that he was compelled by decisions of this court to charge the

jury that comparable sales are the best evidence of value in *all* condemnation cases and that but for his misapprehension he would not have so charged in this case. We perceive no such error. It is clear that the trial judge did not think such an instruction was mandatory under *all* circumstances, but rather concluded that under the facts of this case such an instruction was appropriate and therefore mandatory. Having correctly determined that there was an issue of fact for the jury as to whether several sales relied upon by the government witness were comparable, the trial judge was then obligated to give an instruction that if found to be comparable, such sales are the best evidence of value, but not the only evidence. The law was correctly stated by Judge Boreman in United States v. Whitehurst, 337 F.2d 765, 775 (4th Cir. 1964), when he said, "[I]t is settled law that comparable sales are the best evidence of value." *See also* United States v. Miller, 317 U.S. 369, 374–375, 63 S.Ct. 276, 87 L.Ed. 336 (1943), United States v. Lowrie, 246 F.2d 472, 474 (4th Cir. 1957).

The judgment of the district court will be

Affirmed.