**UNITED STATES of America,**
**Appellee,**

v.

**The RIGHT TO USE AND OCCUPY 3.38 ACRES OF LAND, MORE OR LESS, Situate IN CITY OF ALEXANDRIA, STATE OF VIRGINIA et al.,**

**Keltec Division, Aiken Industries, Inc., Appellant.**

**No. 72-2493.**

United States Court of Appeals, Fourth Circuit.

Argued May 9, 1973.

Decided Sept. 25, 1973.

Craig S. Bamberger, Washington, D. C. (Gadsby & Hannah, Washington, D. C., on brief), for appellant.

Neil T. Proto, Atty., U. S. Dept. of Justice (Kent Frizzell, Asst. Atty. Gen., Brian P. Gettings, U. S. Atty., and George R. Hyde and David A. Clarke, Jr., Attys., Dept. of Justice, on brief), for appellee.

Before BOREMAN, Senior Circuit Judge, and BUTZNER and RUSSELL, Circuit Judges.

BUTZNER, Circuit Judge:

Keltec Division of Aiken Industries, Inc. appeals from a condemnation award that the district court entered on a jury verdict. Aiken contends: (1) that the government lacked authority to condemn the land; (2) that the district court adopted an erroneous valuation test;

and (3) that the district court improperly allocated the jury award between the landlord and tenant. Only in the allocation of the award do we find that the district court committed error.

The United States filed a complaint in the Eastern District of Virginia to condemn a leasehold interest in certain real property for a night vision laboratory. The leasehold the United States sought to acquire was for a term ending June 30, 1971, extendable at the election of the United States for yearly periods until 1976. The condemned property consisted of two separate tracts, both of which were leased to Aiken. The Linedsall Corporation owned one tract, a 1.38 acre site improved with a two story, 30,000 square foot building. The Fellsmere Corporation owned the second tract, an unimproved two acre plot that was part of a larger parcel.

Following a trial in the district court, the jury set the annual fair market value of the leasehold that the government had condemned at $75,326, and the court ordered judgment in accordance with the verdict. The landlords and tenant stipulated that $3,000 of the award should be apportioned to the Fellsmere tract and the remainder to the Linedsall tract. The court then awarded the landlord, Linedsall, all of the $72,326 attributed to the Linedsall tract; it made no distribution of the $3,000 apportioned to the Fellsmere tract.

I

Aiken argues that the Secretary of the Army lacked condemnation authority because no express statutory authorization empowered him to acquire the leaseholds he condemned. The government responds, and the district court held, that the Appropriations Act of January 11, 1971, Pub. L. No. 91–668, 84 Stat. 2028, authorized the acquisition. We affirm the ruling of the district court.

 The federal condemnation statute, 40 U.S.C. § 257 (1970), allows the United States to condemn any real es-

tate that an officer of the government has been authorized to acquire, but the statute itself confers no power to acquire any specific real estate. Furthermore, 10 U.S.C. § 2676 (1970) denies a military department the power to acquire real property unless the acquisition is expressly authorized by law. Notwithstanding these statutory strictures, a general appropriations act provides a sufficient basis for condemnation if Congress intended the act to authorize the acquisition. United States v. Mock, 476 F.2d 272, 274 (4th Cir. 1973). Moreover, an appropriations act need not refer to the specific transaction if the project comes within the class of expenditures that Congress intended to authorize. United States v. Kennedy, 278 F.2d 121 (9th Cir. 1960).

 The issue in the case before us, therefore, is whether the Appropriations Act of January 11, 1971 authorized the Secretary to acquire a leasehold in the premises Aiken was renting. Title V of the Act appropriates funds:

"For expenses necessary for basic and applied scientific research, development, test and evaluation, including maintenance, rehabilitation, lease, and operation of facilities and equipment, as authorized by law. . . ." Pub. L.No.91–668, 84 Stat. 2028 (1971).

The government emphasizes that Congress specified leases as one of the items for which the Act appropriated funds. Aiken, relying on the phrase "as authorized by law," insists that the Act permits expenditures only for leases that are authorized by other provisions of law.

The text of the Act, as the respective contentions of the parties indicate, is subject to differing interpretations, but the legislative history is less ambiguous. Army officials, testifying at Congressional hearings on the Act, told a subcommittee of the Senate Appropriations Committee that they intended to use a portion of the funds appropriated in Title V for a night vision laboratory.[1] Aft-

---

1. Hearings on Dept. of Defense Appropriations for Fiscal Year 1971 Before the Subcomm. of the Senate Comm. on Appropria-

tions, 91st Cong., 2d Sess., pt. 2, at 790, 792, 1000 (1970).

er Congress completed hearings on the Act, but prior to its passage, the Secretary reported to the Armed Services Committees of both Houses of Congress that he proposed to lease, on a short term basis, the property Aiken was renting.[2] Because this information was before Congress when it voted, we hold that enactment of the appropriations bill sufficiently indicates a congressional intent to authorize the Secretary to acquire the leasehold and that no additional statutory authorization is necessary. *Cf.* United States v. Mock, 476 F.2d 272, 274 (4th Cir. 1973); United States v. Kennedy, 278 F.2d 121 (9th Cir. 1960); Polson Logging Co. v. United States, 160 F.2d 712 (9th Cir. 1947).

## II

When the United States filed its complaint, Aiken was leasing the Linedsall tract under a 15-year lease commencing November 1, 1964 with three 5-year renewal options. Because the government condemned the entire premises, the Linedsall lease terminated all of Aiken's obligations under the lease as of the date the company surrendered possession. The condemnation clause in the lease, however, reserved Aiken's right to prosecute any claim for damages that it might have against the condemning authority.[3]

Aiken also leased the Fellsmere tract under a 15-year lease. The Fellsmere lease began January 1, 1962, and it too gave Aiken three 5-year renewal options. Of the property embraced by the Fellsmere lease, the government condemned only a small, unimproved lot for parking, and Aiken's obligations under this lease continued unabated.[4]

Aiken contends that its compensation for the term the government condemned should be measured by the mar-

2. This report described the army's proposed acquisition as follows:

"Since there is no suitable Government-owned space in the desired area, the Department of the Army proposes to lease approximately 35,000 square feet of additional space for the Night Vision Laboratory until such time as new construction can be provided at Fort Belvoir for this activity. It is estimated that the annual rental will approximate $3.00 per square foot or $105,000 for 35,000 square feet, including service and utilities. The lease will provide for a firm term of one year with renewal privileges for an additional four to six years with provision for cancellation privileges."

The army submitted the report pursuant to 10 U.S.C. § 2662 (1970), which requires each military department to report to the Armed Services Committees of the Congress all proposed lease acquisitions where the estimated annual rent exceeds $50,000.

3. The condemnation clause of the Linedsall lease provides:

"If the entire leased premises shall be taken for any public or quasi-public use under any statute or by the right of eminent domain . . . then all obligations of the LESSEE under this lease shall cease and terminate as of the date on which the LESSEE surrenders, or is deprived of, the physical possession and occupation of said demised premises, and the LESSEE shall have the right to file and prosecute its claims against such taking authority for damages resulting from such taking."

4. The condemnation clause in the Fellsmere lease provides:

"In event * * * [of a partial taking of the leased premises as a result of which] the LESSEE, in its judgment, cannot reasonably carry on its business on the remaining portion of the premises in substantially the same manner in which it has theretofore been originally conducted, then the LESSEE in addition to any other rights granted by law, shall have the right, at its option (a) to terminate this lease upon not less than ten (10) days written notice to the LESSOR at any time within sixty (60) days after the LESSEE shall be required to surrender possession of the part so taken; or (b) to remain in possession of the residual portion of said premises in which event the rent shall be reduced, effective as of the date of said surrender, by two-thirds (⅔) the proportion that the lot area of the property so taken bears to the total lot area of the entire leased premises immediately prior to such taking. . . ."

Because the parking lot condemned by the Secretary did not prevent Aiken from carrying on its business in substantially the same manner as it had prior to the condemnation, Aiken did not terminate the lease, and there has been no proportionate adjustment of the rent.

ket value of the unexpired terms of its leases with Linedsall and Fellsmere, including renewal options. The district court rejected this test. The court ruled that the correct standard for determining compensation for the leasehold acquired by the government was the annual rental value measured as though the premises were rented in the open market on a lease from a long-term tenant to a temporary occupier. Applying this test, the jury found that $75,362 was the annual market rental value of the condemned leasehold. We find no error in the district court's measure of just compensation for the leasehold that the government acquired. It fully accords with the method of valuation prescribed by United States v. Petty Motor Co., 327 U.S. 372, 66 S.Ct. 596, 90 L.Ed. 729 (1946), and United States v. General Motors Corp., 323 U.S. 373, 65 S.Ct. 357, 89 L.Ed. 311 (1945), for short-term leaseholds.

■■ Ordinarily, condemnation of a leasehold for part of the term of an underlying lease does not invalidate the lease. The tenant remains liable for the reserved rent, and he can reoccupy the premises when the government vacates them. Moreover, the tenant's continuing interest in the property—interrupted only by the temporary occupancy of the government—is a factor that must be considered in determining just compensation for the tenant. United States v. General Motors Corp., 323 U.S. 373, 65 S.Ct. 357, 89 L.Ed. 311 (1945).

Different principles apply when, as here, a clause in the underlying lease relieves the tenant of all obligations with respect to the property, including the obligation to pay the reserved rent after the government quits the premises. Such a clause effectively terminates the tenancy. In United States v. Petty Motor Co., 327 U.S. 372, 66 S.Ct. 596, 90 L.Ed. 729 (1946), the Court held that a tenant could recover nothing from the condemnor when his lease contained a clause providing that condemnation would terminate the tenancy and that the tenant would not share in the award.

The Court reasoned that compensation is required only for rights which are taken, and it held that the condemnation clause in the lease, not the government's acquisition of the property, destroyed the tenant's rights. It said:

"[The tenant] had contracted away any rights it might otherwise have had. We are dealing here with a clause for automatic termination of the lease on a taking of property for public use by governmental authority. With this type of clause, at least in the absence of a contrary state rule, the tenant has no right which persists beyond the taking and can be entitled to nothing." 327 U.S. at 376, 66 S.Ct. at 599.

This rule bars Aiken from recovering the market rental value of the premises for the portion of its lease that, without the condemnation clause, would have remained after the expiration of the government's leasehold. Here, as in *Petty Motor*, Aiken's contract with its landlord, not the condemnation, terminated Aiken's interest in the premises. Our ruling is consistent with the district court's holding, from which Linedsall did not appeal, that Linedsall was not entitled to compensation for the destruction of Aiken's long-term tenancy. In this respect, the court rightly observed that Aiken's tenancy was terminated only because Linedsall agreed to the condemnation clause, and that the condemnation itself did not destroy it.

### III

■ Aiken and its landlords, Linedsall and Fellsmere, stipulated that $3,000 of the jury's award should be attributed to the Fellsmere parking lot. There can be no doubt that Aiken is entitled to this sum. The condemnation simply interrupted Aiken's occupancy of this tract temporarily. Under the terms of its lease, it remains liable for the reserved rent, and at the conclusion of the government's occupancy, it may resume possession. Fellsmere has not been damaged by the condemnation because it will receive its reserved rent. We hold,

therefore, that Aiken is entitled to the entire $3,000 attributed to the annual market rental value of the Fellsmere tract throughout the period of government occupancy. *See* John Hancock Mut. Life Ins. Co. v. United States, 155 F.2d 977, 978 (1st Cir.), cert. denied, 329 U.S. 774, 67 S.Ct. 193, 91 L.Ed. 665 (1946); 2 Nichols, Eminent Domain § 5.23 n.15 (1970).

█ By agreement of the parties, the $72,326 balance of the award is attributable to the Linedsall tract. Aiken readily concedes that Linedsall is entitled to the reserved rental for the property in the amount of $64,576.80. This leaves in dispute $7,749.20, the economic bonus by which the annual market rental value allowed by the jury exceeds the reserved rent. The district court, noting that the condemnation clause terminated the lease, awarded the economic bonus to the landlord. We believe that this ruling failed to take into consideration Aiken's reservations of its right to recover damages from the condemnor.

In United States v. Petty Motor Co., 327 U.S. 372, 66 S.Ct. 596, 90 L.Ed. 729 (1946), the condemnation clause not only terminated the lease, but also provided that the tenant should not be entitled to any award. Here, in contrast, Aiken reserved its "right to file and prosecute its claim against [the government] for damages resulting from the taking." While this clause does not enlarge the government's liability, it does affect the distribution of the award. The clause is an acknowledgement by the landlord that the tenant will suffer damages from the taking and that the tenant is entitled to participate in the award. If the parties had intended otherwise, a clause similar to the one mentioned in *Petty Motor*, 327 U.S. at 375 n.4, 66 S.Ct. 596, barring the tenant from sharing in the award, would have been appropriate. Since Aiken did not have the right to resume possession of the premises after the government vacated them, its only cognizable damages were the annual market rental of the premises, less the reserved rent—that is, the economic bonus. *See Petty Motor*, 327 U.S. at 381, 66 S.Ct. 596; *accord*, United States v. 4 Parcels of Land, 20 F.Supp. 306, 309 (S.D.N.Y. 1937). We, therefore, interpret the condemnation clause to provide that, in allocating the award between the landlord and tenant, the landlord is entitled to the reserved rent and the tenant to the economic bonus for the period that the government is in possession of the premises. This accords with the general rule, as stated in John Hancock Mut. Life Ins. Co. v. United States, 155 F.2d 977, 978 (1st Cir.), cert. denied, 329 U.S. 774, 67 S.Ct. 193, 91 L.Ed. 665 (1946):

"If, after a condemnation, a lessee remains under obligation to pay rent, it is entitled to damages equal to the fair rental value of the leased premises. If the lessee is no longer under such obligation, then it is entitled only to the difference between the fair rental value and the rent stipulated in the lease."

Linedsall claims that it has been damaged because the government need give only thirty days notice to exercise an option for renewal of its yearly lease, instead of the ninety days notice required by the lease. However, the only expert whose appraisal of the property was admitted into evidence declined to place any value upon this claim, and Linedsall introduced no other evidence by which its loss, if any, with regard to this provision could be accurately measured. Moreover, Linedsall's disadvantage, if any, results from the clause by which it voluntarily terminated Linedsall's obligation, not from the condemnation itself.

We have examined the other issues that Aiken raises on appeal and find in them no reversible error. The judgment of the district court is affirmed in part and vacated in part. The case is remanded for further proceedings consistent with this opinion.