UNITED STATES of America, Plaintiff,

v.

1440.35 ACRES OF LAND, MORE OR LESS, SITUATE IN CHARLES COUNTY, STATE OF MARYLAND, and the Corporation of Roman Catholic Clergymen of Maryland, et al. and Unknown Owners, Defendants.

Civ. No. H–76–962.

United States District Court,
D. Maryland.

Aug. 10, 1977.

Ronnie Shorenstein, Dept. of Justice, Washington, D. C., for plaintiff.

Thomas N. Biddison, Jr., and Gallagher, Evelius & Jones, Baltimore, Md., for defendants.

## MEMORANDUM AND ORDER

ALEXANDER HARVEY, II, District Judge.

The United States instituted this condemnation action on June 25, 1976, seeking to acquire only a leasehold interest [1] in land in Charles County, Maryland, which had been the subject of a series of consensual leases between the defendant owner and the government continuously since 1942.[2] The four-year term of the most recent lease, which was extinguished by the institution of this action, was to have expired on June 30, 1976. Each of the consensual leases between the parties contained a provision requiring the government to "return the premises in as good condition as that existing at the time of entering upon the same under this lease, reasonable and ordinary wear and tear and damages by the elements or by circumstances over which the government has no control, excepted."

Discovery which this Court has permitted to date in this case over the objection of the government has shown how important the enforcement of this lease provision is to the owner. For the last 25 years, the Department of the Army has used the property, known as the Blossom Point Test Site, as a testing ground for military weapons, with the result that the land is impregnated to a depth of several feet with thousands of pieces of shrapnel, unexploded shells and other potentially dangerous devices. According to a report prepared by the Edgewood Arsenal in 1973, decontamination of the site, if possible at all,[3] would cost considerably in excess of $20 million, an amount many times greater than the fair market value of the property.[4] The land in its present condition has no appreciable market value and no utility except as a military testing ground or a wildlife refuge.

In Paragraph 2b of its answer, defendant has asserted that on May 4, 1976, it made demand under the above lease provision that the government return the property at the expiration of the lease term "in as good condition as that existing at the time of entering upon the same under this lease," but that the government has failed to comply with such provision. Defendant therefore objects to the present taking for the following stated reasons: "In the Government's taking of the term of years they have made no provision for the restoration of the property at the termination of the period. In doing so, the Government is effectively at this time depriving Defendant of the fee interest in the property in that the property would be valueless at the end of the term without first being decontaminated. The taking is an effective taking of the fee without just compensation."

On October 6, 1976, the government moved to strike Paragraph 2b of the answer, arguing that it is not required to provide in its Declaration of Taking in a condemnation case like this one for the restoration of the subject property, since such an obligation would arise by operation of law. *See Kimball Laundry Co. v. United States*, 338 U.S. 1, 69 S.Ct. 1434, 93 L.Ed. 1765 (1948); *United States v. General Motors Corp.*, 323 U.S. 373, 384, 65 S.Ct. 357, 89 L.Ed. 311 (1944); *Eyherabide v. United States*, 345 F.2d 565, 170 Ct.Cl. 598 (1965).

---

1. The Declaration of Taking describes the estate to be taken as "a term for years ending 30 June 1977, *extendible for yearly periods thereafter, at the election of the United States until 30 June 1981 . . .*"

2. The defendant owner is The Corporation of Roman Catholic Clergymen of Maryland.

3. The report states: "It is our conclusion that the task of clearing the area for unrestricted use is impractical, extremely expensive, and virtually impossible. To undertake such a clearing would be [a] hazardous engineering undertaking and result in completely destroying the ecology of the area. In addition, complete assurance or certification that the area was free of all hazardous items could still not be given."

4. An appraisal report dated August 12, 1974, prepared by a staff appraiser for the Army Corps of Engineers, concluded that the property had a fair market value of $1650 per acre, so that the 1440.35 acres subject to the present taking would have a value of $2,376,577.50. At a recent status conference, counsel for defendant indicated his belief that the land was worth as much as $1800 per acre.

If the cost of any such restoration would exceed the diminution in value caused by the government's occupancy, then the government is liable for the diminution in value. *Georgia Kaolin Co. v. United States*, 214 F.2d 284 (5th Cir. 1954), *cert. denied*, 348 U.S. 914, 75 S.Ct. 294, 99 L.Ed. 716 (1955), *reh. denied*, 145 Ct.Cl. 39 (1959); *Flood v. United States*, 274 F.2d 483 (9th Cir.), *cert. denied*, 363 U.S. 805, 80 S.Ct. 1239, 4 L.Ed.2d 1148 (1960).

In opposing the government's motion, the defendant has asserted that the obligation to restore the property, which arises by law under the cases cited by the government, is an obligation to restore the property to the condition existing at the beginning of the government's tenancy established pursuant to the condemnation proceeding. In this case, that date would be June 30, 1976, and as noted above, the subject property had already been contaminated by then. Defendant argues that the government is in reality taking more than a leasehold interest and that defendant is therefore "entitled to recover full compensation for what is being taken." These questions raised by the parties require the Court to decide in advance of trial when and in what action the defendant would be permitted to seek compensation for the contamination of its property, whether in this condemnation action or in a separate action, and whether at the present time or at the expiration of the government's occupancy.

In *United States v. Certain Parcels of Land in City of Baltimore*, 55 F.Supp. 257 (D.Md.1944), this Court retained jurisdiction of the condemnation action until the termination of the government's occupancy for the purpose of considering the amount of compensation to be awarded for damage caused during such occupancy. 55 F.Supp.

at 263. In an Opinion by Judge Chesnut, the Court held that the owner was entitled to be compensated immediately for damage caused by a prior tenant under a consensual lease [5] which had been extinguished as a result of the condemnation action. 55 F.Supp. at 264. A similar ruling in this case would permit the defendant to seek recovery in this action in connection with the government's obligation under the prior leases to repair damage caused between 1942 and 1976.

■ In *United States v. 452.13 Acres of Land*, 207 F.Supp. 323 (N.D.Fla.1962), the Court, ordering a new trial, invited the landowner to allege in a separate action against the government brought under the Tucker Act his claim that the government had actually taken more than the interest described in the Declaration of Taking, i. e., a "navigation easement" rather than merely a "flight clearance easement", so that the condemnation action and the action under the Tucker Act could be consolidated for trial.[6] The necessity for proceeding in such a fashion is the result of the well-recognized rule that "the extent of the take is a discretionary decision for the condemning authority which may not be modified by the judiciary. The reason for this is that as long as the government acts within the scope of its authority it cannot be compelled to take other than that which it had determined is needed." *United States v. 21.54 Acres*, 491 F.2d 301, 304 (4th Cir. 1973).

Although the particular facts of a case have apparently never moved a federal court to find an exception to the general rule, the existence of an exception where an administrative decision to condemn a particular interest is alleged to be arbitrary, capricious or in bad faith has been suggested

---

5. The prior lease had been entered into between the owner and a government contractor at the instance and with the approval of the government, which had the right to take over the lease should the tenant default. In a separate agreement, the government had agreed to pay all of the tenant's expenses under the lease.

6. Such an action under the Tucker Act, referred to as an "inverse condemnation action",

may be brought in the District Court if the amount claimed does not exceed $10,000; otherwise the action must be brought in the Court of Claims, preventing consolidation with any pending condemnation proceeding in a District Court. 28 U.S.C. §§ 1346, 1491, 2501; *United States v. 21.54 Acres of Land*, 491 F.2d 301, 304 (4th Cir. 1973).

by several Courts of Appeal. *See Southern Pacific Land Co. v. United States*, 367 F.2d 161, 162 (9th Cir. 1966); *United States v. 91.69 Acres of Land*, 334 F.2d 229, 232 (4th Cir. 1964). The facts disclosed by the documents produced in discovery show clearly that the most practical action the government could take in the unusual situation presented here would be to take the entire fee interest at this time and avoid the necessity of another suit. Government officials are well aware of the facts here, but government counsel has suggested that one of the reasons for failure to take such action is the lack of funds. In any event, this Court does not construe defendant's answer to allege improper conduct on the part of government officials in condemning only the leasehold interest.

In a letter to counsel dated April 6, 1977, this Court refused to strike the defense asserted in Paragraph 2b, relying on Judge Chesnut's 1944 decision. This ruling was not intended to be a final one, but the court was anxious to permit discovery to go ahead concerning the questions raised by Paragraph 2b.

Discovery has now been completed, and the government has filed a formal motion asking this Court to reconsider its preliminary ruling. The government first argues that a landowner may not be awarded compensation for an estate greater than that described in the Declaration of Taking. *Berman v. Parker*, 348 U.S. 26, 35–36, 75 S.Ct. 98, 99 L.Ed. 27 (1954); *Shoemaker v. United States*, 147 U.S. 282, 13 S.Ct. 361, 37 L.Ed. 170 (1893); *United States v. 3,317.39 Acres of Land*, 443 F.2d 104 (8th Cir. 1971); *United States v. Brondum*, 272 F.2d 642 (5th Cir. 1969). It is next contended that any such claim would amount to a counterclaim, which is not permitted in a condemnation proceeding action. Rule 71A(e), F.R. Civ.P.; *United States v. 3317.39 Acres, su-*

*pra.* Finally, the government argues that the issue of whether the government must restore defendant's property or pay damages due to its occupancy does not arise until the expiration of the government's occupancy. *United States v. 883.89 Acres of Land*, 442 F.2d 262 (8th Cir. 1971); *United States v. Gila River Pima-Maricopa Indian Community*, 391 F.2d 53 (9th Cir. 1968). The parties have filed supplemental memoranda in support of and in opposition to the pending motion, and it has been agreed that the Court should undertake to rule on the pending motion without a hearing.

The starting point in considering the present question is Judge Chesnut's decision in *United States v. Certain Parcels of Land, supra*, which is relied upon by both parties. This Court reads that case as supporting the defendant's position and not the government's. Judge Chesnut there held that the landowner could recover immediately in the condemnation action for damage caused during the term of the prior lease, but that only the award for damage caused during the government's occupancy pursuant to the exercise of eminent domain would have to await the end of such occupancy. The question now presented is whether, in view of the more recent cases on the subject, this ruling should be followed here. After considering all of the authorities cited by the parties, this Court concludes that Judge Chesnut's ruling should not be followed and that the government's motion should accordingly be granted.

In formulating *ad hoc* a procedure for dealing with what was considered to be a novel factual situation,[7] Judge Chesnut in 1944 was applying Maryland rules of procedure[8] and did not have the guidance of Rule 71A, F.R.Civ.P. Subsection (e) of that Rule provides that in addition to the ap-

---

7. Faced with the exigencies of a war whose duration could not be predicted, the government in the 1940's had turned to the practice of acquiring temporary interests in property by way of eminent domain. The propriety of such exercise of power had not been firmly established when Judge Chesnut decided that case.

8. Prior to the addition of Rule 71A in 1951, the federal courts followed state condemnation procedures except where different procedures were prescribed for certain kinds of condemnation proceedings by federal statute. *See* Wright & Miller, *Fed.Prac. & Proc.*, Civil § 3041.

pearance or answer permitted to be filed in a condemnation action, "[n]o other pleading or motion asserting any additional defense or objection shall be allowed." A counterclaim, which would otherwise seem to be an appropriate vehicle for raising a claim that the government is actually taking a greater estate than that described in the Declaration of Taking, is therefore not permitted by the Federal Rules of Civil Procedure.

 A review of the cases cited by the parties indicates that the courts have universally held that absent exceptional circumstances, a claim such as the one asserted here by defendant cannot be raised in a condemnation proceeding.[9] Furthermore, it is clear from the cases that the federal government in its discretion has the power to condemn any portion of an interest held by a property owner. That the condemnee does not know when, if ever, he will regain possession after condemnation of a leasehold interest dies not normally invalidate the exercise of such power. In the present case, it is quite certain that the government will eventually acquire the fee interest, or at least that the defendant will never be returned to possession. Understandably, the defendant wishes to press its claim that under these circumstances the government has in fact condemned the fee or at least has taken away the defendant's right under the prior leases to have the property restored to its 1942 condition. In a case precisely in point, the Ninth Circuit held that a similar claim by landowners could be asserted against the government only in an action under the Tucker Act. *United States v. Gila River Pima-Maricopa Indian Community, supra* at page 1073, 391 F.2d at 55–56. Clearly, this is the rule which must apply here. Since the amount of the defendant's claim in this case would undoubtedly exceed $10,000, exclusive jurisdiction is in the Court of Claims.

 The government has offered to consent to this Court's retaining jurisdiction of this condemnation action until the government voluntarily terminates its occupancy, and to stipulate that the government would then be liable in this action for the restoration of the property to its 1942 condition or the diminution in value, whichever is less. Neither party has cited any authority supporting such a procedure, and this Court entertains considerable doubt as to the enforceability of such a stipulation, involving as it would the purported giving by government agents of their consent that the United States may be sued in a forum where the Congress has not clearly given such consent. *See United States v. United States Fidelity & Guaranty Co.*, 309 U.S. 506, 513, 60 S.Ct. 653, 84 L.Ed. 894 (1940), cited in *United States v. Gila River Pima-Maricopa Indian Community, supra*, 391 F.2d at 56. Accordingly, this Court will not approve any such stipulation.

Quite obviously, the most feasible way to proceed under the facts here would be for the government to condemn the entire fee so that the questions presented could be decided in one court proceeding rather than two. But this Court cannot compel government officials to proceed in a manner left by law to their discretion, although the Court has suggested such a procedure to government counsel. Unfortunately, existing law requires that the defendant must present his claim against the United States in a separate proceeding filed in the Court of Claims. Accordingly, the defendant should pursue its rights under the prior leases with the government in the Court of Claims within the time allowed by 28 U.S.C. § 2501.

For the reasons stated, it is this 10th day of August, 1977, by the United States District Court for the District of Maryland,

ORDERED:

1. That the plaintiff's motion for reconsideration be and the same is hereby granted;

2. That the Order of this Court, dated April 6, 1977, denying the motion of the plaintiff to strike Paragraph 2b from the answer be and the same is hereby rescinded;

---

9. See cases cited at page 1073.

3. That the motion of the plaintiff to strike Paragraph 2b of the answer be and the same is hereby granted;

4. That at the trial on the issue of just compensation in this action, the defendant will not be permitted to introduce evidence relating to just compensation for the taking of a fee interest in the property.