374

UNITED STATES of America,
Plaintiff–Appellee,

v.

BANISADR BUILDING JOINT
VENTURE, Defendant–
Appellant,

and

98,856 Gross Square Feet of Space Consisting of Three (3) Buildings and Their Appurtenances That Make Up the Derey Engineering Building Located at 1860 Wiehle Avenue, Reston, Virginia, Defendant.

UNITED STATES of America,
Plaintiff–Appellant,

v.

BANISADR BUILDING JOINT
VENTURE, Defendant–
Appellee,

and

98,856 Gross Square Feet of Space Consisting of Three (3) Buildings and Their Appurtenances That Make Up the Derey Engineering Building Located at 1860 Wiehle Avenue, Reston, Virginia, Defendant.

Nos. 93–2492, 94–1015.

United States Court of Appeals,
Fourth Circuit.

Argued July 10, 1995.

Decided Sept. 20, 1995.

**ARGUED:** Jahangir Ghobadi, Fairfax, VA, for appellant. Joan M. Pepin, United States Department of Justice, Washington, DC, for appellee. **ON BRIEF:** Lois J. Schiffer, Assistant Attorney General, Robert L. Klarquist, John O. Holm, United States Department of Justice, Washington, DC; William T.K. Dolan, Office of General Counsel, General Services Administration, Washington, DC, for appellee.

Before ERVIN, Chief Judge, MURNAGHAN, Circuit Judge, and PHILLIPS, Senior Circuit Judge.

Affirmed by published opinion. Judge MURNAGHAN wrote the opinion, in which Chief Judge ERVIN and Senior Judge PHILLIPS joined.

## OPINION

MURNAGHAN, Circuit Judge:

We are presented here with various challenges to the district court's decision to adopt the findings of a court-appointed commission in calculating the amount of "just compensation" owed by the United States Government for a "taking" of a building in Reston, Virginia. We affirm throughout, finding no error in the district court's decision.

*Factual Background and Procedural History*

In 1970, Appellee/Cross–Appellant, the United States Government ("Government"), entered into a five-year rental lease with three options for five-year renewals, with Gulf Reston, Inc. for the Derey Engineering Building in Reston, Virginia. The lease term commenced on March 1, 1971. In 1976, Appellant/Cross–Appellee, Banisadr Building Joint Venture ("Banisadr"), purchased the building from Gulf Reston, and succeeded to its rights and duties under the lease.

The Government exercised all three of its five-year renewal options during the following years. As the end of the lease term approached, the Government attempted to negotiate a new lease with Banisadr, but the

parties were unable to reach a satisfactory agreement. After the lease expired on February 28, 1991, the Government continued to occupy the building as a holdover tenant, and continued to make monthly rental payments to Banisadr.

On October 29, 1991, the Government filed a complaint for condemnation and a declaration of taking in the United States District Court for the Eastern District of Virginia. The declaration of taking specifically stated:

The estate taken is for a term of three (3) years beginning March 1, 1991, with full payment for the balance due, being made to the court together with the right to remove within a reasonable time after the expiration of the term, any and all fixtures, additions, signs, improvements, and any structures put in place by or for The United States.

The Government posted a total sum of $1,100,000 as compensation for the three-year taking term. This amount included $197,080 in interim monthly payments made in accordance with the pre-taking lease (for rental payments from March 1, 1991 to September 30, 1991, the period during which the Government occupied the premises as a holdover tenant), and $902,920 deposited to the registry of the district court on the day on which the declaration of taking was filed.

Banisadr filed its answer on November 27, 1991. The Government filed a motion for summary judgment on March 6, 1992, and Banisadr filed a cross-motion for summary judgment on March 9, 1992. At the summary judgment hearing on March 27, 1992, Banisadr moved for appointment of a commission pursuant to Rule 71A(h) of the Federal Rules of Civil Procedure. With the Government's consent, the court granted Banisadr's motion, and appointed a commission to determine the appropriate amount of just compensation due.

At that time, the parties were additionally in dispute over whether the Government would be liable for restoration costs for the building. The original lease between the Government and Gulf Reston had provided that at the end of the lease, the Government would, at its option, either (1) restore the premises to its 1971 condition, ordinary wear and tear beyond the Government's control excepted, or (2) pay the lessor a sum representing either the diminution in fair market value of the building due to the Government's failure to restore, or the actual cost of restoration, whichever was less. When the lease expired, the Government had not restored the premises to its 1971 condition. On April 10, 1992, the district court held a hearing to resolve the parties' dispute as to whether the property should be appraised, for condemnation purposes, in its existing condition or as if it had been restored. The court issued a ruling holding that the property would be valued as if it had been restored to its 1971 condition.

The district court scheduled the matter for trial before the Commission on May 6, 1993 to determine the issue of just compensation. At the trial, Mr. Lauterbach, Banisadr's expert appraiser, testified on direct examination that just compensation for the three-year taking of the building would be $4,585,000. He arrived at that figure using the "before and after" method of evaluation typically employed in cases of partial takings, and using a 12 percent discount rate. The Government's expert, David Lennhoff, by contrast, valued the property at a lower figure, on the assumption that Banisadr would have to spend at least $2 million for restoration, and using a discount rate of 16 percent; that lower valuation was based on Lennhoff's conclusion that the property was unleasable "as is" and that the property would have to be refit by Banisadr before any new tenant could occupy it.

On May 26, 1993, the Commission filed its trial report with the district court. The report reviewed the testimony of the two expert appraisal witnesses, but did not accept the findings of either expert in their entirety. In particular, the Commission took issue with the Government's conclusion that the building was unleasable "as is" and that $2 million would need to be spent to make it competitive; likewise, the Commission took issue with Banisadr's conclusion that the building would be immediately leasable. Ultimately, the Commission calculated that the property could attract a tenant within six months, and would generate a rent of $3.30 per square

foot. The Commission accordingly arrived at a total just compensation figure of $978,674.40 for the three-year taking period.

On June 7, 1993, both the Government and Banisadr filed objections to the Commission's report. The Government objected to the Commission's failure to discount the future rental income stream to present value, alleging that the proper discount rate should be 16 percent. Banisadr, too, filed three objections: (1) that the report assumed incorrectly that the property was regular office space rather than specialized "high-tech" space, (2) that the award of net rent should have been increased to include taxes and insurance, and (3) that the Commission failed to include in its award compensation for the period of time it would take Banisadr to find a new tenant at the end of the taking. Banisadr withdrew its third objection before the district court ruled.

On July 19, 1993, the Commission filed an answer in which it found that the Government should bear the burden of the taxes and insurance. The Commission also stated that the rent payments should not be discounted over time, but rather that Banisadr should be paid in a timely manner in a lump sum; the Commission concluded, however, that *if* directed by the court to come up with a proper discount rate for the future income stream, the rate would be 4 percent—the approximate inflation rate of recent years. Again, the Government filed an objection as to the Commission's calculation of the discount rate.

The objections were heard on October 12, 1993, and based on the hearing, the district court entered its final order on October 22, 1993, awarding Banisadr a gross amount of $1,321,225.35 as just compensation for the taking. In so holding, the district court adopted the Commission's recommendation of a 4 percent discount rate, and adopted the Commission's valuation of the property at $3.30 per square foot. The court also ruled that the Government was entitled to a credit against the gross amount for interim payments of rent and for the deposit posted at the commencement of the case. The court accordingly subtracted the Government's deposit of $1,100,000 from the award amount,

and ordered the Government to pay $221,227.35 as of November 1, 1993, plus interest until paid.

Banisadr filed a notice of appeal on November 19, 1993. The Government filed a notice of cross-appeal on December 20, 1993. We are presented with three primary issues on appeal and cross-appeal: (1) whether the district court erred in adopting the Commission's valuation of the subject property; (2) whether the district court erred in applying a 4 percent discount rate to the stream of future income in computing the award of just compensation; and (3) whether the district court erred in refusing to permit Banisadr to put forth its claim that the Government breached a contractual duty under the preceding lease to restore the premises to its prior condition. We affirm throughout.

### I. *District Court's Adoption of the Commission's Valuation of the Property*

Banisadr first alleges on appeal that the district court clearly erred in adopting the Commission's valuation of the disputed property at $3.30 per square foot. In particular, Banisadr contends that the Commission's finding that the condemned property was a regular office space leasable only at a low rent was in direct conflict with the evidence that the property was of a specialized nature adaptable to high-tech computer use. *See* Appellant's Brief at 27–28. Additionally, Banisadr argues that the Commission should have valued the property using a "before and after" approach rather than a capitalization of income approach. Because the Commission's findings were not clearly erroneous, we affirm. *See United States v. Payne,* 368 F.2d 74, 76 (4th Cir.1966) ("Unless the findings of the commission be shown to the district court to be 'clearly erroneous' they must be accepted, and unless this court, in turn, finds error in the acceptance or rejection by the district court, the decision must be affirmed.") (citations omitted); *United States v. Certain Interests in Property,* 296 F.2d 264, 269 (4th Cir.1961) ("The District Judge has the authority and duty to review the findings of the commission, and such findings *must* be accepted by him un-

less he considers them clearly erroneous.") (emphasis added).

First, it is well settled that in the event of a "partial taking"—*i.e.*, a case in which the Government has taken one part of a larger tract, leaving the remainder to the landowner—the measure of just compensation is the difference between the fair and reasonable market value of the land immediately before the taking and the fair and reasonable market value of the portion that remains after the taking. *See United States v. Werner,* No. 93–1738, 1994 WL 507461, at * 5-6, 1994 U.S.App. LEXIS 25933, at *19 (4th Cir.1994) (unpublished), *citing to United States v. 2.33 Acres of Land,* 704 F.2d 728, 730 (4th Cir.1983). Banisadr claims that the district court erred in the instant case by not using this "before and after" approach in valuing the Derey Building. In so arguing, however, Banisadr confuses a *partial* taking with a *temporary* taking. In the instant case, the Government did not engage in a *partial* taking—that is, it did not take only a part of the premises; rather, as the Government correctly argues, it engaged in a *temporary* taking of Banisadr's *total* property. Thus, the district court did not err in rejecting Banisadr's "before and after" approach to its calculation. Indeed, it is well established that when the Government takes property only for a period of years, such as in the case before us, it essentially takes a leasehold in the property. Thus, the value of the taking is what rental the marketplace would have yielded for the property taken. *See Kimball Laundry Co. v. United States,* 338 U.S. 1, 7, 69 S.Ct. 1434, 1438, 93 L.Ed. 1765 (1949) (finding that "the proper measure of compensation is the rental that probably could have been obtained"). *See also United States v. Right to Use & Occupy 3.38 Acres of Land,* 484 F.2d 1140, 1144 (4th Cir.1973) (finding that where the Government condemned a short term leasehold in premises which were the subject of a longer private lease, the correct standard for determining just compensation was the annual rental value measured as though the premises were rented in the open market). Accordingly, the district court did not err in using a method of valuation based on what it considered to be a fair market rental value for the property, rather than following Banisadr's suggested "before and after" approach.

Second, neither the district court nor the Commission erred in finding that the highest and best use of the building was for regular office space at a low-end rent, rather than for a specialized high-tech use. Indeed, it was wholly within the Commission's proper discretion for it to conclude, after weighing all of the evidence presented, that Banisadr's testimony regarding the alleged specialized "high tech" nature of the building was neither credible nor convincing. *See United States ex rel. Tennessee Valley Authority v. Powelson,* 319 U.S. 266, 273, 275–76, 63 S.Ct. 1047, 1051, 1052–53, 87 L.Ed. 1390 (1943) (finding that the burden is on the landowner to show that his suggested "highest and best use" is reasonably probable and that it has a real market value). Indeed, although Banisadr's expert witness testified that the building's features would make it attractive to high-tech companies, particularly defense contractors, neither his testimony nor his report contained any data supporting his statement. In stark contrast, the Government witness's report provided a detailed analysis of leases on several buildings comparable to the Derey Building in support of its valuation of the property as a regular office space. *See United States v. Upper Potomac Properties Corp.,* 448 F.2d 913, 918 (4th Cir. 1971) (finding that comparable sales are the best evidence of value). Thus, the Commission did not err in finding that the office space was better evaluated as ordinary office space, rather than as a specialized computer facility space.

Third, it was not clearly erroneous for the Commission to reject Banisadr's expert's unsupported conclusion that the building could be rented for $14.50 per square foot, and instead to accept more completely the valuation testimony of the Government witness in coming up with its final $3.30 figure. The Commission clearly found that the testimony of the Government's witness was the "most thorough and best researched." Such credibility determinations should not be disturbed on appeal. *See United States v. 9.20 Acres of Land,* 638 F.2d 1123, 1128 (8th

Cir.1981) (finding that it is the function of the commission, and not an appellate court, to make credibility determinations and to assess the weight to be given to each witness's testimony).

■ Last, Banisadr, without merit, argues that the Commission impermissibly applied its own expertise in calculating the just compensation figure, instead of relying on the evidence, when it described as "common knowledge" the poor condition of the Reston, Virginia area real estate market. Because Banisadr did not raise this objection before the district court, it is precluded from doing so on appeal. *Agra, Gill & Duffus, Inc. v. Benson,* 920 F.2d 1173, 1176 (4th Cir.1990).

For the foregoing reasons, we find that the district court did not err in adopting the Commission's valuation of the property for purposes of calculating the proper just compensation figure.

## II. *Application of a Four Percent Discount Rate*

Second, Banisadr alleges that the district court erred in applying a discount rate to the stream of future rental income; the Government cross-appeals on the same issue, alleging that the district court erred in adopting the Commission's suggested 4 percent discount rate rather than the 16 percent rate submitted by the Government or the 12 percent rate submitted by Banisadr. Because the district court erred neither in applying a discount rate nor in adopting the Commission's recommended 4 percent discount rate, we affirm.

■ First, we initially dispose of Banisadr's allegation on appeal that the district court erred in applying *any* discount rate to the future stream of rental income expected from the Government. In the proceedings below, Banisadr *conceded* before the district court that a discount rate *was* applicable, and suggested that the only question at issue was *what* specific rate to apply. Therefore, Banisadr cannot now contest the district court's decision to apply a discount rate. The basic principles of judicial economy dictate that a theory not raised at trial cannot be raised on

appeal. *Agra, Gill & Duffus,* 920 F.2d at 1176.

Second, we likewise reject the Government's attempt, on cross-appeal, to challenge the Commission's (and the district court's) calculation of the appropriate discount rate at 4 percent. In particular, the Government contends that the 4 percent discount rate was not supported by the evidence because neither party suggested that the discount rate should be that low. In essence, the Government contends that because the 4 percent figure was not in the range between the 12 percent figure suggested by Banisadr and the 16 percent figure suggested by the Government, the 4 percent figure runs counter to the evidence.

■ The argument is unavailing, however, because the Commission was in no way obligated to accept either of the party's theories on the appropriate rate of discounting. Indeed, this Court has noted, albeit in dicta, that falling within a range of testimony adduced at a hearing does not necessarily provide conclusive support for a Commission's calculations. *United States v. 452.876 Acres of Land,* 667 F.2d 442, 445 (4th Cir.1981). There is no requirement that the Commission must accept some discount rate between the figures offered by the parties.

■ Moreover, the 4 percent figure is not clearly erroneous when viewed in light of the purposes of discounting. The purpose of applying a discount rate is to reflect the degree of risk in the undertaking involved and to reflect the rate of return in comparable investments. *United States v. Whitehurst,* 337 F.2d 765, 772 (4th Cir.1964). In the instant case, the Commission chose the inflation rate—4 percent—as a proper measure of such risk. Because the 4 percent figure was not clearly erroneous—it did not run contrary to the evidence, but only ran contrary to the positions of both parties—the figure should be affirmed on appeal.

Last, the case at bar is not the type of case in which the Commission improperly relied on its own expertise, rather than on the evidence presented, in calculating the 4 percent figure as the proper inflation rate. *See United States v. Merz,* 376 U.S. 192, 197, 84

S.Ct. 639, 642, 11 L.Ed.2d 629 (1964) (noting the danger of commissioners using their own expertise). Indeed, both parties agreed in court that the proper inflation rate would be in the 3–4 percent range. The Commissioners therefore did not go beyond the evidence in calculating the 4 percent discount rate.

The district court did not err.

### III. *Exclusion of Claim for Restoration Costs*

 Last, Banisadr contends on appeal that the district court erred in refusing to allow it to present evidence of the restoration costs that the Government allegedly would owe Banisadr at the end of the three-year taking under the original lease. Because the court correctly prevented Banisadr from introducing such a contract-based claim into this condemnation action, and properly held that Banisadr could not recover restoration costs for injuries that *might* occur during the three-year taking, we affirm.

First, Banisadr, in arguing that restoration costs are always included in a compensation award for a taking, again misconceives the instant case as concerning a *partial* taking rather than a *temporary* taking. Indeed, Banisadr mistakenly cites several cases for the proposition that restoration costs should always be awarded in cases of *partial* takings in order to compensate for the necessary *severance* of a particular piece of property during a partial taking. *See* Appellant's Brief at 29. Because the instant case is not a case of partial taking, however, as discussed in Section I *supra*, and thus because no severance of the property was ever needed, those cases cited by Banisadr which suggest that restoration costs must be included are simply inapposite. The case before us is a case about the temporary taking of a property, and thus severance and any accompanying restoration costs are not at issue here.

Second, and more important, the contractual nature of the Government's obligation to provide restoration costs under its original lease renders it inappropriate for disposition in a condemnation case. Indeed, the case law, albeit sparse, suggests that Banisadr's contractual claim for restoration costs cannot properly be asserted in a condemnation ac-

tion. In *United States v. 1440.35 Acres of Land,* 438 F.Supp. 1070 (D.Md.1977), for example, the Government had temporarily condemned a property which it had leased for 25 years. Under the terms of the lease, as in the instant case, the Government was obligated to restore the premises to as good a condition as that existing at the time of entering the lease, reasonable wear and tear excepted. 438 F.Supp. at 1071. As in the instant case, the Government had not complied with the lease obligation to restore the property at the time of the taking. The landowner accordingly asserted the restoration claim during the Government's condemnation action. The district court held that the landowner's lease-based counterclaim could *not* be asserted in the condemnation action because F.R.C.P. 71A—which governs condemnation cases—provides that other than an answer, no pleading or motion asserting any additional defense or objection shall be allowed by the defendant. *Id.* at 1073–74. Accordingly, the court held that a "counterclaim, which would otherwise seem to be an appropriate vehicle for raising a claim that the government is actually taking a greater estate than that described in the Declaration of Taking, is therefore not permitted by the Federal Rules of Civil Procedure." *Id.* at 1074. Instead, the court held that such a claim properly may be made only in a separate action filed under the Tucker Act, and can generally be brought only in the Court of Claims. *Id. See also United States v. 21.54 Acres of Land,* 491 F.2d 301 (4th Cir.1973).

Under that case law, it is clear that Banisadr cannot properly assert in this condemnation action its lease-based contractual claim in which it alleges that the United States has failed to comply with the restoration provision of the lease. If Banisadr seeks to recover damages based on the Government's failure to restore the premises in compliance with the restoration clause, its only remedy is to file suit against the United States under the Tucker Act. Banisadr cannot make such a contract-based claim in this condemnation action.

Last, Banisadr alleges on appeal, without merit, that it should have been able to pres-

ent evidence to the district court supporting its claim for restoration costs which would be owed by the Government at the *end* of the three-year taking period. As correctly noted by the Government, however, it would be impossible for any court now to decide what hypothetical restoration costs, if any, may be owed by the Government at the end of the three-year period. Thus, although Banisadr could assert a claim for damages at the *end* of the three-year period if necessary, to do so now would be inappropriate.

For the foregoing reasons, we

*AFFIRM.*