**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Robert Stanton WERNER, Emilene S. Werner, et al., Defendants–Appellants,**

and

**175.76 Acres of Land, more or less, situate in the County of Jefferson, State of West Virginia; Unknown Owners, Defendants. (Two Cases)**

Nos. 89–2118, 89–2129.

United States Court of Appeals, Fourth Circuit.

Argued Feb. 8, 1990.

Decided Oct. 16, 1990.

R. Edwin Brown, argued (Laurie R. Gitajn, Brown and Sturm, Rockville, Md., on brief), for defendants-appellants.

John Thompson Stahr, argued (Richard B. Stewart, Asst. Atty. Gen., Martin W. Matzen, Gary M. Peterson, Land and Natural Resources Div., U.S. Dept. of Justice, Washington, D.C., on brief), for plaintiff-appellee.

Before RUSSELL and WILKINS, Circuit Judges, and BUTZNER, Senior Circuit Judge.

WILKINS, Circuit Judge:

Robert Stanton Werner appeals the judgment of the district court awarding $263,640 as compensation for the United States' condemnation of 175.76 acres of his property in Jefferson County, West Virginia. The dispositive issue is whether the district court erred in denying a motion to replace one of three land commissioners appointed pursuant to Rule 71A(h) of the Federal Rules of Civil Procedure to determine the amount of just compensation for the property taken. We reverse and remand for a new determination of compensation.

## I.

The 175.76 acres condemned by the United States was part of Werner's 596–acre tract of mountainous land located across the Shenandoah River from Harpers Ferry, West Virginia. After filing a Declaration of Taking in the district court, the United States acquired the property on February 5, 1980, for use as part of the National Park Service's Appalachian National Scenic Trail.[1]

On October 6, 1982, pursuant to Rule 71A(h) of the Federal Rules of Civil Procedure, the district court entered an order appointing a Land Condemnation Commission to determine the amount of just compensation to be paid for the property. On January 17, 1983, Werner moved to disqualify one of the commissioners, Bradley D. Nash, on the ground that Nash was biased against him and had a conflict of interest. In his response to the motion for disqualification, Nash attested to his ability to render a fair and impartial decision. Relying on this response, the district court determined that there was no conflict of interest and denied Werner's motion.

On appeal Werner first contends that Nash, who was the Mayor of Harpers Ferry, should have been disqualified because of conflicts between his duty as a land commissioner and his duty as the mayor. He bases this contention on the fact that in the mid–1970's Nash, pursuant to his duties as mayor, obtained two financial grants from the National Park Service for the Harpers Ferry police force and for the construction of a new sewer system. At the time the commission was appointed, Nash was negotiating with the National Park Service in an attempt to obtain additional funding for a town water project. Werner asserts that Nash's ongoing and past relationship with the Park Service raises reasonable questions about his impartiality as a land commissioner.

Werner also contends that Nash was personally biased in favor of the National Park Service. First, in the 1960's Nash personally made several donations of land to the Park Service. In recognition of these generous gifts, the Park Service erected and dedicated a flagpole accompanied by a commemorative plaque in Nash's honor in Harpers Ferry. The plaque was inscribed, "[t]his flagstaff dedicated to Bradley D. Nash for his steadfast support in the development of Harpers Ferry National Historic Park." Nash is also a charter member of the Harpers Ferry Historical Association which occasionally makes donations to the Park Service. Finally, Nash, in his response opposing Werner's motion for disqualification, revealed possible animosity toward Werner's counsel, Roger Perry:

A final thought: land speculation in the Park area, in anticipation of continued expansion already planned, has perhaps influenced Attorney Perry personally to acquire such land, other than involved in this action. I would like to believe that such acquisition was purely for prudent investment unaffected by knowledge of Park plans. Acquisition of all such lands can only be determined by comparable

---

**1.** The United States acquired the property pursuant to 40 U.S.C.A. § 258a (West Supp.1990). Under section 258a, upon the filing of a declaration of taking, title to the subject property immediately vests in the United States which is irrevocably committed to payment of the compensation award.

Although the Declaration of Taking filed by the government identified the parcel as containing 173.76 acres, the parties stipulate that the parcel taken actually totaled 175.76 acres.

values elsewhere and by future assumed developments.

Werner argues that Nash's implied accusation that his attorney was a land speculator was further evidence that he would not receive fair treatment from Mayor/Commissioner Nash.

## II.

In *United States v. Certain Parcels of Land*, 384 F.2d 677 (4th Cir.1967), we considered the question of when a district court must disqualify a land commissioner. We held that "disqualification is a matter for the exercise of discretion by the district judge, unless *actual bias* has been demonstrated beyond reasonable possibility of disagreement." *Id.* at 681 (emphasis added). At the time of this decision, similar standards were applicable to the disqualification of judges. *See* 28 U.S.C.A. § 455 (West 1968), *amended by* 28 U.S.C.A. § 455 (West Supp.1990); *United States v. Fabio*, 394 F.2d 132, 134 (4th Cir.1968). Since our ruling in *Certain Parcels of Land*, however, Congress amended 28 U.S.C.A. § 455 in 1974 to significantly heighten the disqualification standards for judges. Section 455(a) of Title 28 states that "[a]ny justice, judge, or magistrate of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned." In *Rice v. McKenzie*, 581 F.2d 1114 (4th Cir.1978), we applied the amended version of section 455 and held that a judge may be disqualified even in the absence of any actual bias or prejudice. *Rice* recognizes that when Congress amended the statute it was concerned not only with impartiality, but also with the appearance of impartiality from the viewpoint of the general public. We held that the amendment "replaced the old subjective standard with an objective one, and it reversed the old principle embodying a judge's duty to sit when not clearly disqualified." *Id.* at 1116. Thus, a judge is disqualified if "a reasonable person would have ... a reasonable basis for doubting the judge's impartiality." *Id.*

The United States argues that *Certain Parcels of Land* is still controlling. It contends that since the statute does not include the words "land commissioner" it must be strictly interpreted to include only "[a]ny justice, judge, or magistrate." 28 U.S.C.A. § 455(a). It further reasons that application of the stricter standards of section 455(a) to land commissioners is unnecessary because they are under the control of the district court.

Werner argues that the standard of *Certain Parcels of Land* no longer controls because the term "judge" in section 455(a) encompasses others, such as land commissioners, even though their official title may not be "judge." Werner urges this interpretation because by amending section 455, Congress intended to enhance public confidence in all adjudicatory proceedings. *See* H.R.Rep. No. 1453, 93d Cong., 2d Sess. 5, *reprinted in* 1974 *U.S.Code Cong. & Admin. News* 6351, 6355 ("This general standard [of 455(a) ] is designed to promote public confidence in the impartiality of the judicial process....").

## III.

██ Whether a land commissioner or special master should be held to the same disqualification standards as judges is a question that has split the circuits. In *Morgan v. Kerrigan*, 530 F.2d 401 (1st Cir.), *cert. denied*, 426 U.S. 935, 96 S.Ct. 2648, 49 L.Ed.2d 386 (1976), the court stated that "[s]ince masters and experts are subject to the control of the court and since there is a need to hire individuals with expertise in particular subject matters, masters and experts have not been held to the strict standards of impartiality that are applied to judges." *Id.* at 426. In *Rios v. Enterprise Ass'n Steamfitters Local Union 638*, 860 F.2d 1168 (2d Cir.1988), the court relied on the absence of the term "special master" in section 455(a) to conclude that they should be held to a lower standard. *Id.* at 1173–74. Both courts agreed that the practical problems in hiring qualified individuals as special masters overrode the need to impose higher ethical standards. Both courts applied the less stringent actual bias test of *Certain Parcels of Land. See id.* at 1174; *Morgan*, 530 F.2d at 426; *see also United States v. 5.00 Acres of Land*, 673 F.2d 1244, 1247

(11th Cir.1982) (applying standard of *Certain Parcels of Land* to land commissioners without explanation).

To the contrary, the Court of Appeals for the District of Columbia Circuit has held that special masters must be held to the same standards of disqualification as judges. *Jenkins v. Sterlacci*, 849 F.2d 627, 630–32 (D.C.Cir.1988). Instead of basing its analysis solely on section 455, the court also relied on the American Bar Association *Code of Judicial Conduct for United States Judges* which was adopted in April 1973 by the Judicial Conference of the United States. It directs a judge to "disqualify himself or herself in a proceeding in which the judge's impartiality might reasonably be questioned." *Code of Judicial Conduct for United States Judges*, Canon 3(C)(1). The "Compliance" portion of the Code states that "[a]nyone, whether or not a lawyer, who is an officer of a judicial system performing judicial functions, including an officer such as a bankruptcy judge, special master, court commissioner, or magistrate, is a judge for the purpose of this Code." *Id.* at I–58; *see also Belfiore v. New York Times Co.*, 826 F.2d 177, 185 (2d Cir.1987) (citing the *Code of Judicial Conduct for United States Judges*, 69 F.R.D. 273, 286 (1975), for proposition that the Code is applicable to special masters), *cert. denied*, 484 U.S. 1067, 108 S.Ct. 1030, 98 L.Ed.2d 994 (1988).

We are persuaded that the disqualification standards of section 455(a) are applicable to land commissioners. First, the purpose of amending 28 U.S.C.A. § 455 was to make "the statutory grounds for disqualification of a judge in a particular case conform generally with the recently adopted canon of the Code of Judicial Conduct." H.R.Rep. No. 1453, 93d Cong., 2d Sess. 1, *reprinted in* 1974 *U.S.Code Cong. & Admin. News* 6351. The standard for disqualification defined in section 455(a) is substantially identical to the standard set by the Code which specifically states that a "court commissioner" is considered a judge. Second, the amendment was intended "to promote public confidence in the impartiality of the judicial process by saying, in effect, if there is a reasonable factual basis for doubting the judge's impartiali-

ty, he should disqualify himself and let another judge preside over the case." *Id.* at 6355. *Jenkins*, emphasizing that avoiding the appearance of bias was not only desirable but necessary, stated that "[a] fair trial in a fair tribunal is a basic requirement of due process. Fairness of course requires an absence of actual bias in the trial of cases. But our system of law has always endeavored to prevent even the probability of unfairness." *Jenkins*, 849 F.2d at 631 (quoting *In re Murchison*, 349 U.S. 133, 136, 75 S.Ct. 623, 625, 99 L.Ed. 942 (1955)).

Because the findings of fact made by special masters must be accepted by the district court unless clearly erroneous, the *Jenkins* court concluded that "special master[s] occup[y] a position functionally indistinguishable from that of a trial judge." *Id.* at 631; *see* Fed.R.Civ.P. 53(e)(2) ("[T]he court shall accept the master's findings of fact unless clearly erroneous."). We find that this reasoning applies equally to land commissioners. The primary task of a land commission is to determine the value of the land on the date of taking. As with the factual findings of special masters, factual findings made by a land commission as to the value of the land are reviewable under the clearly erroneous standard. Fed.R.Civ.P. 71A(h) & 53(e)(2).

Public confidence in the fairness of a proceeding is important at all levels, including local tribunals established to determine just compensation following condemnation of property pursuant to the government's eminent domain power. Indeed, Congress amended Rule 71A(h) in 1985 to "insure that unbiased and competent commissioners are appointed." Fed.R.Civ.P. 71A advisory committee's note. We conclude that the disqualification provisions of section 455(a) and of the Code apply to land commissioners.

### IV.

▪ As we stated in *Rice*, the inquiry under section 455(a) is "whether another, not knowing whether or not the judge is actually impartial, might reasonably question his impartiality on the basis of all of the circumstances." *Rice*, 581 F.2d at 1116. Nash, as mayor of Harpers Ferry,

had secured funds from the National Park Service for various town projects and was attempting to obtain funding for an additional project at the time the land commission was appointed. This factor, together with his past donations to the Park Service, the flagpole and commemorative plaque erected by the Park Service in his honor, his active participation in the Harpers Ferry Historical Association, and his affidavit in opposition to his disqualification raise sufficient questions about his objectivity so that a disinterested observer could reasonably question his impartiality. We therefore remand for a new determination of just compensation pursuant to Rule 71A(h).[2]

REVERSED AND REMANDED.

---

**2.** Because we remand for a new determination of just compensation we need not address the remaining issues raised by Werner.

