36 F.3d 1095
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Robert Stanton WERNER, Defendant-Appellant,
v.
175.76 ACRES OF LAND, more or less, situated in the County
of Jefferson, State of West Virginia; Unknown
Owners, Defendants.
 No. 93-1738.
 United States Court of Appeals, Fourth Circuit.
 Argued February 10, 1994.
Decided September 19, 1994.
 
 1
 Appeal from the United States District Court for the Northern District of West Virginia, at Elkins. Robert Earl Maxwell, District Judge. (CA-80-7-M)
 
 
 2
 Argued: R. Edwin Brown, Brown & Sturm, Rockville, MD. On brief: Laurie R. Hanig, Brown & Sturm, Rockville, MD, for appellant.
 
 
 3
 Argued: Jacques B. Gelin, Environment and Natural Resources Division, United States Department of Justice, Washington, D.C. On brief: Myles E. Flint, Acting Asst. Atty. Gen., John A. Bryson, Michael K. Baker, Joy Ryan, Environment and Natural Resources Division, United States Department of Justice, Washington, D.C., for appellee.
 
 
 4
 N.D.W.Va.
 
 
 5
 AFFIRMED.
 
 
 6
 Before RUSSELL and WILLIAMS, Circuit Judges, and OSTEEN, United States District Judge for the Middle District of North Carolina, sitting by designation.
 
 OPINION
 PER CURIAM
 
 7
 Robert Stanton Werner appeals the district court's judgment awarding $395,500 as just compensation for the condemnation of 175.76 acres of his property in Jefferson County, Virginia. Werner claims that the district court committed several errors, including: (1) informing the second Land Condemnation Commission (the "Second Commission") in its order of appointment of the award granted by the first Land Condemnation Commission (the "First Commission"); (2) entering two ex parte orders requested by the Government; (3) providing erroneous instructions to the Second Commission; and (4) adopting the Second Commission's inadequate and conclusory report. For reasons set forth below, we find that the district court did not commit reversible error, and, therefore, we affirm the lower court's determination of just compensation.
 
 I.
 
 8
 On February 5, 1980, the United States filed a complaint and declaration of taking, acquiring 175.76 acres of a 596-acre tract in Jefferson County, West Virginia, owned by Werner (the "landowner"). The property taken was a plateau of mountainous land located across the Shenandoah River from the Harpers Ferry community. The United States obtained the land "for the proper administration, preservation, and development of the Appalachian National Scenic Trail for the benefit and enjoyment of the public." (J.A. at 15.)
 
 
 9
 On October 6, 1982, the district court appointed the First Commission to determine just compensation for the condemned land, pursuant to Fed.R.Civ.P. 71A(h). The First Commission held a hearing and filed its report on June 12, 1985, awarding the landowner $263,640. The district court adopted the report in November 1988, and the landowner appealed to this court. This court reversed the judgment and remanded for "a new determination of [just] compensation," finding that the district court had appointed a biased commissioner to the three-person panel and had refused to replace him upon the landowner's objection. United States v. Werner, 916 F.2d 175, 179 (4th Cir.1990).
 
 
 10
 On July 11, 1991, the district court issued an order appointing the Second Commission, which was made up of a new three-member panel. The order included the same instructions previously given to the First Commission, and the opening paragraph informed the Second Commission of the award rendered by the First Commission. The landowner filed a motion objecting to the inclusion of the prior award, and requesting that the relevant pages be removed from the possession of each commissioner and a cautionary instruction be given. The district court denied the motion, finding that "[t]he prior award [was] a matter of public knowledge" since it was contained in a published Fourth Circuit opinion, and that the instructions already given to the Second Commission adequately addressed the proper grounds for determining an award. (J.A. at 99.)
 
 
 11
 The Second Commission held a trial for six days in September and October 1991. In order to accomplish its assigned task, the Second Commission focused on evidence regarding the highest and best use of the land at the time of the taking, and the fair and reasonable market value of the landowner's property both before and after the taking of the 175-acre tract.
 
 
 12
 In reaching its determinations, the Second Commission limited each party to four valuation witnesses.[1] The landowner and William Malcolm, an expert real estate witness, both testified that the best use of the land before the taking was as a ski resort, that the best use after the taking was for residential development, and that just compensation was between $8,010,000 and $10,785,142. Another landowner witness, real estate expert Paul Payne, testified that the best use of the land before the taking was for a recreational and residential development, that the best use after the taking was for a large lot subdivision, and that just compensation was approximately $1,260,334. The fourth landowner witness, C. William Hensell, asserted that the best use of the land before the taking was for residential development, the best use after the taking was for a development of three-to five-acre residential homes, and that just compensation was $1,667,268.
 
 
 13
 The Government presented only two valuation witnesses. Richard Bowers testified that the best use before and after the taking was as a large lot residential subdivision and determined just compensation to be $211,000. Gregory Didden, another expert real estate appraiser for the Government, testified that the highest and best use of the property before and after the taking was for five-acre residential lot sales. He calculated just compensation as $158,400.
 
 
 14
 After four days of testimony and the conclusion of the direct cases of both parties, the Second Commission took a three-week recess. During this period, the landowner subpoenaed William Bowen, a real estate appraiser identified as a potential Government witness but not called to testify. The Government filed a motion to quash the subpoena and a motion in limine in the district court, along with a letter requesting an expedited ruling. The district court complied and issued an ex parte order granting the Government's motion to quash because the time for discovery had elapsed when the trial began. The court also granted the Government's motion in limine because the landowner had already presented four valuation witnesses, the maximum number allowed under the rules set forth by the Second Commission. Therefore, although Bowen was called as a rebuttal witness before the Second Commission, he was prohibited from testifying on highest and best use and on value.
 
 
 15
 On October 24, 1991, the Second Commission filed its report, rejecting the landowner's position as to the highest and best use of the land and finding that the highest and best use was as a large lot residential development. The Second Commission calculated the value of the landowner's property before the taking and the value of the landowner's remaining property after the taking, the difference between the two values constituting "just compensation." It determined that the market value of the entire tract of land before the taking was $791,300, and that the market value of the portion remaining after the taking was $395,500. Accordingly, the Second Commission awarded the landowner $395,500[2] as just compensation for the land taken. The landowner filed objections to the report and the Government filed a response. On April 15, 1993, the district court entered an order denying the landowner's objections and adopting the report and award of the Second Commission. The landowner filed a timely appeal on May 10, 1993.
 
 II.
 
 16
 Initially, we must decide whether the district court committed reversible error by informing the Second Commission of the dollar amount of the award reached by the First Commission, and by denying the landowner's request for a cautionary instruction. The landowner contends that the district court's inclusion of the amount awarded by the First Commission in its order of appointment and instructions to the Second Commission was prejudicial, and tainted the Second Commission's determination of just compensation. This is a question of law which we review de novo. See Meekins v. United Transp. Union, 946 F.2d 1054, 1057 (4th Cir.1991). We find that the district court did not err when it informed the Second Commission of the outcome of the prior condemnation proceeding, and, to the extent that there was any error, it was harmless.
 
 
 17
 The landowner relies on the general rule that it is improper and prejudicial to inform a jury in a civil action of a prior award in an earlier adjudication of the same case. See Olitsky v. Spencer Gifts, Inc., 964 F.2d 1471, 1475-76 (5th Cir.) (recognizing that disclosure of the result of the first trial to the jury could be grounds for reversal, although the district court's curative instruction was sufficient to correct the error), cert. denied, 113 S.Ct. 1253 (1993); Coleman Motor Co. v. Chrysler Corp., 525 F.2d 1338, 1351 (3d Cir.1975) ("The admission of a prior verdict creates the possibility that the jury will defer to the earlier result and thus will, effectively, decide a case on evidence not before it."). However, even accepting the validity of this principle, the landowner's reliance thereon is misplaced because the trier of fact in this action was not a jury, but rather a commission appointed pursuant to Fed.R.Civ.P. 71A(h).
 
 
 18
 In the context of a condemnation action, Rule 71A(h) provides that the issue of compensation is determined in a trial by jury, "unless the court in its discretion orders that, because of the character, location, or quantity of the property to be condemned, or for other reasons in the interest of justice, the issue of compensation shall be determined by a commission of three persons appointed by it."[3] A commission is generally appointed in complex cases requiring greater expertise and knowledge than that possessed by a jury of laypersons. See Alabama Power Co. v. 1354.02 Acres, 709 F.2d 666, 667-68 (11th Cir.1983) (district court may appoint commissioners rather than a jury when "the ends of justice best would be served"); United States v. 320.0 Acres of Land, 605 F.2d 762, 828 (5th Cir.1979) ("[A] commission is to be used only for exceptional cases."). Furthermore, because of the expertise of its members, a commission is required to file a report detailing the procedures and reasoning used in calculating a particular award. See United States v. Merz, 376 U.S. 192, 198 (1964); United States v. 434.0 Acres of Land, 792 F.2d 1006, 1011 (11th Cir.1986) ("Use of the commission, rather than a jury, means that the trial court will impose a 'somewhat stricter' review over the report than it would with a general jury verdict." (emphasis in original) (quoting 320.0 Acres of Land, 605 F.2d at 809-10 n. 101)).
 
 
 19
 When appointed, a commission has the same powers afforded to a special master as provided in Fed.R.Civ.P. 53(c).[4] See Fed.R.Civ.P. 71A(h). A commission has the authority to regulate the proceedings held before it, which entails presiding over the hearings as well as serving as the finder of fact. Here, the Second Commission was empowered to rule on the admissibility of evidence, and was instructed to exclude "incompetent, irrelevant, or legally inadmissible evidence." (J.A. at 71.) Thus, it was the Second Commission's responsibility to disregard evidence it found to be objectionable or extraneous, including statements such as the one regarding the prior award at issue in this case. Accordingly, it is beyond dispute that commissions and juries are dissimilar entities and, although it may be prejudicial to inform a jury of a prior award in a civil action, the same is not true with regard to a commission.
 
 
 20
 Nonetheless, had we determined that the district court erred by informing the Second Commission of the prior award, we would have found that the error was harmless. See Fed.R.Civ.P. 61.[5] The Second Commission awarded the landowner $131,860 more than the First Commission, and it adequately set forth in its report independent evidentiary bases for the award. In fact, there is no indication from the hearings or the Second Commission's report that the findings were influenced in any way by the prior award. Additionally, the Chairman of the Second Commission was an "experienced attorney," (J.A. at 71), and the prior award was contained in a published decision, Werner, 916 F.2d at 176, therefore the Second Commission had access to the amount of the prior award. In sum, there is nothing in the record to suggest that the Second Commission's knowledge of the prior award adversely affected the landowner's substantial rights in any way.
 
 III.
 
 21
 The landowner also contends that the district court erred by entering two ex parte orders requested by the Government. He seeks reversal based on the claims that (1) the district court did not have jurisdiction to rule on the Government's motion in limine and motion to quash, and (2) the district court's ex parte order violated his due process rights. We find the landowner's contentions to be without merit.
 
 
 22
 This issue arose after the landowner subpoenaed William Bowen, a real estate appraiser who was identified as a potential Government witness but not called during the Government's case in chief. The Government filed a motion in limine and a motion to quash in the district court, along with a letter requesting "that the court shorten the time for response and make an expedited ruling." (J.A. at 100.) The district court granted the Government's motion to quash and motion in limine. Therefore, although Bowen was called as a rebuttal witness, he was not allowed to testify as to highest and best use and value of the property.
 
 
 23
 We need not resolve these issues, however, because even if the district court intruded on the Second Commission's authority, the error was harmless. See Fed.R.Civ.P. 61; Blum v. Cottrell, 276 F.2d 689, 693 (4th Cir.1960) ("[T]he question was one for the jury and not for the judge ... [but] the ruling was not so prejudicial to the plaintiff as to require a reversal of the judgment."). The landowner's motion to subpoena Bowen was made after the discovery period had lapsed and after the parties had finished presenting their direct evidence, making it too late to depose Bowen and admit further evidence or testimony in the landowner's case in chief. Moreover, the landowner had already presented four valuation witnesses, the maximum number allowed pursuant to the Second Commission's self-imposed rule. Furthermore, the landowner was allowed to present Bowen as a rebuttal witness on matters not concerning land valuation. Finally, Rule 71A(h) makes clear that "[t]rial of all issues shall otherwise be by the court," thus evidencing the fact that the district court retained some degree of supervisory power over the Second Commission. In conclusion, it is evident that the district court's resolution of these motions did not impinge upon the landowner's substantial rights.
 
 IV.
 
 24
 Next, the landowner claims that the district court improperly instructed the Second Commission. We disagree.
 
 
 25
 The district court provided the Second Commission with the exact same instructions that were given to the First Commission. The landowner, however, did not raise any issue regarding the instructions in his prior appeal before this court, see Werner, 916 F.2d at 176, and, therefore, waived these claims. See United States v. Bell, 5 F.3d 64, 66 (4th Cir.1993) ("[T]he mandate of a higher court is 'controlling as to matters within its compass.' ... [T]he rule forecloses litigation of issues decided by the district court but foregone on appeal or otherwise waived." (quoting Sprague v. Ticonic Nat'l Bank, 307 U.S. 161, 168 (1939))); United States v. Wright, 716 F.2d 549, 550 (9th Cir.1983) ("When a party could have raised an issue in a prior appeal but did not, a court later hearing the same case need not consider the matter.").
 
 
 26
 Notwithstanding that waiver, this court has held that "[t]he district court has considerable discretion in choosing the specific wording of instructions." United States v. Piche, 981 F.2d 706, 712 (4th Cir.1992), cert. denied, 113 S.Ct. 2356 (1993). Relying on this principle, we find that the district court properly instructed the Second Commission.
 
 
 27
 Primarily at issue is Just Compensation Instruction 4--Value as a Whole--which provides as follows:
 
 
 28
 You are to consider the value of the land as a whole, as a unit. While in making your award you should consider all elements of value, ... you cannot separately value each of these elements and aggregate them to reach the value of the entire tract. This is true because these factors of value do not exist independently of each other and cannot be realized at the same time.
 
 
 29
 (J.A. at 78.) We find that this instruction adequately represents the unit rule. The landowner was entitled to have the Second Commission consider all factors of value that would affect the market value of the property. The landowner, however, was not entitled to have all factors affecting the value of the property added together and to have the total taken as the market value of the property.[6] See United States v. 91.90 Acres of Land, 586 F.2d 79, 87 (8th Cir.1978), cert. denied, 441 U.S. 944 (1979); United States v. 97.19 Acres of Land, 582 F.2d 878, 882-83 (4th Cir.1978); Cade v. United States, 213 F.2d 138, 142 (4th Cir.1954).
 
 
 30
 The landowner also contends that the district court erred in failing to instruct the Second Commission regarding severance damages, valuation of unique property, and competence of the landowner to testify to an opinion of value. We find these claims to be without merit. Just Compensation Instruction 7--Partial Taking--provides as follows:
 
 
 31
 You may have instances in which the Government has taken a part of a larger tract, leaving the remainder to the landowner.... [T]he taking may not affect the value of the remainder in any way [or] it may either damage or benefit the remainder.... In any such situation the measure of just compensation is the same, that is, the difference between the fair and reasonable market value of the land immediately before the taking and the fair and reasonable market value of the portion that remains after the taking....
 
 
 32
 (J.A. at 79.) This instruction adequately incorporates the concept of severance damages. See United States v. 2.33 Acres of Land, 704 F.2d 728, 730 (4th Cir.1983) ("The commissioners purported to use a before and after method of valuation; and ... if this method is properly employed when there is a partial taking, severance damages should not be allowed."); 91.90 Acres of Land, 586 F.2d at 86 ("It is incorrect to think of 'severance damage' as a separate and distinct item of just compensation apart from the difference between the market value of the entire tract immediately before the taking and the market value of the remainder immediately after the taking.... The matter is taken care of automatically in the 'before and after' submission."). The instructions also adequately embody the valuation of unique property, see (J.A. at 75-77--Just Compensation Instructions 1-3,) and competence of the landowner to testify to an opinion of value, see (J.A. at 73-74--Weighing the Evidence Instructions 2 and 3).
 
 V.
 
 33
 We must also determine whether the district court erred in adopting the Second Commission's report. The findings of the Second Commission must be adopted unless clearly erroneous. Fed.R.Civ.P. 53(e)(2), 71A(h); Merz, 376 U.S. at 198; Werner, 916 F.2d at 178. This court has summarized the standard of review as follows: "Unless the findings of the commission be shown to the district court to be 'clearly erroneous' they must be accepted, ... and unless this court, in turn, finds error in the acceptance or rejection by the district court, the decision must be affirmed." United States v. Payne, 368 F.2d 74, 76 (4th Cir.1966) (citations omitted).
 
 
 34
 Nonetheless, as emphasized by the landowner, the Second Commission's report must be made up of more than conclusory findings.
 
 
 35
 Merz, 376 U.S. at 198; see also Prechter v. United States, 400 F.2d 124, 127 (5th Cir.1968) ("A mere summary of the evidence and the assertion of conclusory statements is not sufficient."). Otherwise, the district court would be unable to discern how the Second Commission sorted through conflicting evidence and testimony. Merz, 376 U.S. at 198. In Merz, the Supreme Court described an adequate report as follows:
 
 
 36
 [Although] [c]onclusory findings are alone not sufficient, ... [t]he commissioners need not make detailed findings such as judges do who try a case without a jury.... [However,] [they] can be instructed to reveal the reasoning they use in deciding on a particular award, what standard they try to follow, which line of testimony they adopt, what measure of severance damages they use, and so on. We do not say that every contested issue raised ... must be resolved by a separate finding of fact ... [or] that there must be an array of findings of subsidiary facts to demonstrate that the ultimate finding of value is soundly and legally based. The path followed by the commissioners in reaching the amount of the award can, however, be distinctly marked.
 
 
 37
 Id. at 198-99. Moreover, we note that it is the function of the Second Commission, not this court, to make credibility determinations and to assess the weight to be given to witnesses' testimony. See United States v. 9.20 Acres of Land, 638 F.2d 1123, 1127 (8th Cir.1981).
 
 
 38
 The landowner argues that the district court erred in adopting the Second Commission's report. He claims that the Second Commission's findings of fact were conclusory, and that the report lacked sufficient explanation to be reviewed under the clearly erroneous standard. We disagree. After careful review of the Second Commission's report, we find that the Second Commission adequately set forth the bases for its findings of fact and its just compensation award, and that the findings and award were not clearly erroneous.
 
 
 39
 The Second Commission's thirteen-page report provides a brief procedural history, an exhaustive account of the evidence presented at the hearing, and eight factual findings. The report summarizes the testimony of every witness, and, quite significantly, indicates both the testimony upon which the Second Commission primarily relied in making its findings as well as its reasons for accepting such testimony. The report states that "the Commission utilized comparable sales as its standard of value approach."[7] (J.A. at 149.) The Second Commission rejected the landowner's position that the highest and best use of the property was a winter ski resort because "of all the fair market value experts who testified for the landowner and the government, not one opined in favor of a winter ski resort."[8] (J.A. at 149.) Richard L. Bowers, an expert real estate appraiser for the Government, testified that the highest and best use before and after the taking was development of a large lot subdivision. The report states: "Bowers used the market data and direct sales approaches in arriving at his opinions and provided to the commission seven examples of comparable sales, upon which the commission relied heavily in its decision." (J.A. at 144.) Gregory Didden, another expert real estate appraiser for the Government, testified that the highest and best use of the property before and after the taking was for five-acre residential lot sales. The report states that the Second Commission also placed great reliance on Didden's testimony because he used the comparable sales approach to value and provided numerous examples of the sales that he used in his analysis.
 
 
 40
 The landowner presented four valuation witnesses, but two found that the highest and best use of the property was as a ski resort, a fact rejected by the Second Commission. The other two witnesses for the landowner testified that the highest and best use of the property before and after the taking was as a residential development, but the Second Commission explained its lack of confidence in their respective valuation methods. Although William Hensell, a real estate expert, testified that he was using comparable sales as his methodology, the report stated that he "presented to the commission no evidence of any comparable sales, [and] instead relied upon his characterization of 'just my knowledge of what lots were selling for.' " (J.A. at 141-42.) Paul Payne, the landowner's other expert witness, "used what he characterized as a 'developer's approach.' " (J.A. at 140.) Although Payne did consider comparable sales, he only considered two parcels of land, while Bower and Didden used seven different parcels as examples.
 
 
 41
 Accordingly, not only did the report specifically credit the testimony of Bower and Didden, but it obviously did so because they were the only valuation witnesses who found the highest and best use of the property was a residential development, not a ski resort, and who also credibly used comparable sales as their method of valuation. Moreover, the significance placed on the respective witnesses' testimony by the Second Commission was neither unreasonable nor without merit.
 
 
 42
 In its findings of fact, the Second Commission accepted that the highest and best value at the time of taking was for a large lot residential development. The Second Commission determined that the value of the land before the taking was $791,300, the amount stated by Bower. The Second Commission also concluded that the value after the taking was $395,500. Although no expert testified to this exact amount, Bower testified that the value after taking was $580,300, and Didden testified that the value after taking was $370,800. Therefore, the Second Commission obviously adopted a figure which fell between those provided by the two experts it deemed reliable.[9] Accordingly, we find that the Second Commission's report adequately set forth the procedures and reasoning used in calculating the award, and satisfied the standards set forth in Merz and its progeny. See United States v. 403.14 Acres of Land, 553 F.2d 565, 570 (8th Cir.1977) ("There is no requirement that such a report be perfect in form or structure or that it be immune from all criticism...."); United States v. 573.88 Acres of Land, 531 F.2d 847, 849 (7th Cir.1976) ("[T]he commissioners are not required to explain the exact thought processes they utilized nor are they required to develop and apply a mathematical formula which can be programmed, computerized and then reviewed by the district court like an algebraic equation.").
 
 
 43
 This case is easily distinguished from United States v. 452.876 Acres of Land, 667 F.2d 442 (4th Cir.1981), a case in which this court reversed and remanded a condemnation proceeding because the commission's report was inadequate. This court recognized that the commission need not make findings such as a judge, but it found the commission's report lacking in almost every way and "so bare and sparse as to provide no basis for developing whether[its findings] are or are not clearly erroneous." Id. at 444. The entire report in 452.876 Acres of Land, in contrast to this case, was less than one page in length and consisted of five statements, and the district court's order was also unenlightening in ascertaining the analysis used for determining the award.[10]
 
 VI.
 
 44
 For the foregoing reasons, we find no reversible error, and, therefore, affirm the district court's determination of just compensation.
 
 AFFIRMED
 
 45
 OSTEEN, District Judge, concurring in part and dissenting in part:
 
 
 46
 Although I concur with my distinguished colleagues that this case must be affirmed on the substantive issues raised by the landowner, I must respectfully dissent on the procedural matters raised by the landowner and addressed by this Court in sections II and III of the majority opinion. Not once, but twice, the fundamental fairness and integrity of the land condemnation proceeding was jeopardized. Because I do not find such errors to be harmless, I would reverse for a new determination of just compensation.
 
 I.
 
 47
 "The Just Compensation Clause of the Fifth Amendment, which provides that private property shall not be taken without just compensation, is one of the most basic constitutional guarantees that the rights of the individual will not be unfairly sacrificed in the pursuit of the common weal." United States v. 320.0 Acres of Land, 605 F.2d 762, 768 (5th Cir.1979). The fourteen year history of this case reveals a paradigm of difficulty. More particular to the issue, in 1990 this Court reversed the determination of just compensation by the first land commission because the district court failed to replace a commissioner biased against the landowner and his counsel. See United States v. Werner, 916 F.2d 175, 179 (4th Cir.1990).
 
 
 48
 Subsequently, the parties were given an opportunity to interview potential persons to fill the second land commission in order to ensure that the commissioners knew nothing of the prior proceeding. However, in the opening paragraph of the Order appointing the second land commission, the district court informed the commissioners of the monetary figure awarded by the first land commission as just compensation. (J.A. at 66.) The landowner immediately moved for a cautionary instruction which would instruct the commissioners to disregard the prior award. (J.A. at 87.) Notably, the Government conceded that it was improper to instruct the commission of the prior award of just compensation, but quibbled with the cautionary instruction proposed by the landowner. (J.A. at 95.) The district court disregarded the Government's concession and denied the cautionary instruction in its entirety, denouncing the motion as "frivolous and wholly without merit." (J.A. at 99.) Citing only to the rationale that a commission has more expertise than a jury of laypersons as well as the evidentiary responsibilities of a commission, the majority concludes that "commissions and juries are dissimilar entities and, although it may be prejudicial to inform a jury of a prior award in a civil action, the same is not true with regard to a commission." (Slip op. at 7.) While I agree that a commission is granted dual powers of special master and jury, see Fed.R.Civ.P. 71A(h) and 53(c), the reality remains that the commission is the trier of fact. As such, the district court must refrain from interjecting prejudicial remarks which could affect the judgment of the commission, the trier of fact on the issue of just compensation.[1] Because even the Government has conceded that the district court erred by revealing the prior just compensation award, I will more fully address why the error is not harmless.
 
 
 49
 The majority of the panel concludes that no prejudice resulted because the second commission's just compensation award was more than that of the first commission. The majority further reasons that the chairman of the second commission was an experienced attorney and the prior award of just compensation appeared in a published decision, and, thus, no harm could have possibly resulted from the district court's error. Under these facts alone, I do not agree that the error was harmless.
 
 
 50
 A greater award of just compensation from the second commission does not equal substantial justice and does not erase prejudicial error. The range of evidence of just compensation was from a low of $158,400.00 to a high of $10,785,142.00. Yet, the second commission was informed that the first commission awarded $263,640.00. After six days of complex and varied testimony, the second commission awarded the landowner $395,500.00 as just compensation.
 
 
 51
 Although the landowner raises a creative and valid argument that the second commission simply increased the previous award by fifty percent, I find even more compelling the fact that the commission adopted the before-taking value of a Government expert, but did not accept the after-taking value or the just compensation calculation of any expert witness. Thus, the second commission disregarded the evidence from both parties in arriving at its own determination of after-taking value and just compensation. The majority correctly concludes that there is no indication in the transcripts of the hearing or in the report that the prior award influenced the second commission's decision. However, there is also no indication that it did not influence the decision, especially considering that the second commission arrived at a conclusion not supported by expert testimony.
 
 
 52
 The majority also correctly notes that an attorney acted as chairman of the second commission and should have known to exclude incompetent, irrelevant, or inadmissible evidence. More importantly, however, two other commissioners not trained in the law were required to rely heavily upon the instructions from the district court which included, at the outset, the prior just compensation award. The commissioners were never instructed to disregard the prior award. Land commissioners, like jurors and attorneys and judges, are human beings.[2] There is simply no way of determining whether the commission was prejudiced by the prior award and likewise whether substantial justice was served. In an involuntary system such as a land condemnation proceeding, disputes involving the fairness of a certain judicial procedure should be resolved in favor of the substantial rights of the involuntary litigant, especially where, as here, a cautionary instruction would have cured the error. See Gwathmey v. United States, 215 F.2d 148, 156 (5th Cir.1954) (finding that when district court has choice of procedure all reasonable doubt should be resolved in favor of the landowner's fundamental rights). In this case, the cautionary instruction was requested by the landowner, conceded as an appropriate remedy by the Government, and dismissed as merely frivolous by the district court. Under these circumstances, I do not believe substantial justice was served.
 
 II.
 
 53
 "No person shall be ... deprived of life, liberty, or property, without due process of law; nor shall private property be taken for public use without just compensation." U.S. Const. amend. V. In principle, due process is the cornerstone of a land condemnation proceeding due to the involuntary nature of the initial taking as well as the subsequent proceeding to award just compensation. In fact, "[t]o bind litigants to rulings on the basis of evidence and arguments they have had no opportunity to contest is the most elementary sort of due process violation." United States v. 320.0 Acres of Land, 605 F.2d 762, 780 (5th Cir.1979) (reversing district court in group of land condemnation actions where evidentiary rulings were made ex parte ). It is not the responsibility of this Court to resolve the merits of the district court's decision to exclude the testimony of the landowner's rebuttal witness. Rather, it is our duty to determine whether the ex parte nature of the district court's ruling deprived the landowner of his due process rights.
 
 
 54
 As the majority opinion reflects, this dispute arose when the landowner subpoenaed a witness retained by the Government. The Government moved the district court to quash the subpoena and to exclude any "value" testimony of the witness. The Government also requested expedited review and that the landowner's time for response be shortened. (J.A. at 100.) The landowner received copies of the motions late on a Friday afternoon. On the following Monday morning, the landowner faxed the district court a letter requesting that no action be taken until a formal response was filed. The landowner also requested that the matter be left to the jurisdiction of the land commission. (J.A. at 107-08.) On Tuesday, the landowner mailed his response. However, that same day, the district court issued two ex parte orders granting the Government's motions in full. (J.A. at 109-12.)
 
 
 55
 Preventing the landowner from acquiring an opportunity to be heard is the most serious type of due process violation. See 320.0 Acres of Land, 605 F.2d at 780 (while denial of opportunity to be heard was unintentional, the due process violation remained reversible error). Further, in this case, such a seemingly intentional act does not constitute harmless error. While the majority focuses on the merits of the landowner's motion to subpoena the Government's witness and the supervisory power of the district court, the ultimate issue centers on an opportunity to be heard. Regardless of the merits of his position, the landowner had a right to be heard, especially when the question before the district court was whether exceptional circumstances existed to allow the subpoena. See J.A. at 110. The district court determined that exceptional circumstances did not exist after hearing only from the Government. Id. By entering two ex parte orders in the face of the landowner's request to be heard, the district court effectively denied the landowner, an involuntary litigant, a substantial right.
 
 III.
 
 56
 Upon review of this same case during its first appearance in this Court, the Fourth Circuit through a panel of Judges Butzner, Russell, and Wilkins opined that "[p]ublic confidence in the fairness of a proceeding is important at all levels, including local tribunals established to determine just compensation following condemnation of property pursuant to the government's eminent domain power." Werner, 916 F.2d at 178. After fourteen years, the landowner will now receive what we ask him to accept as just compensation. I dare say that he finds no confidence in the fairness of our procedures. While it is not necessary that litigants agree with the final award, it is necessary that the final award in reality and perception be based upon a foundation of fairness. While I understand the realities of crowded dockets and scarcity of judicial resources, I find the results here to be a compromise of this most basic principle.
 
 
 57
 For the foregoing reasons, I believe the landowner is entitled to a new determination of just compensation. Therefore, I dissent.
 
 
 
 [1]
 One of the district court's procedural instructions to the Second Commission provided as follows:
 You are at liberty to impose a reasonable limit (say three or four per side) on the number of witnesses that may testify as to land values or damages, provided that this limitation is announced in advance of the hearing. In such an event the parties will also be allowed to present other witnesses to testify as to other facts and aspects of the case.
 (J.A. at 72.)
 
 
 [2]
 The parties do not raise an issue as to the $300 discrepancy in the award figure ($791,300--$395,500 = $395,800 and not $395,500), and we see no explanation in the record
 
 
 [3]
 Rule 71A(h) does not offend the right to trial by jury because there is no constitutional right to a jury in an eminent domain proceeding. United States v. Reynolds, 397 U.S. 14, 18 (1970)
 
 
 [4]
 Under Rule 53(c), "[t]he order of reference to the master may specify or limit the master's powers...." Subject to such limits, a master has the power to: (1) regulate all proceedings; (2) require the production of evidence; (3) call and examine witnesses; and (4) rule on the admissibility of evidence. Fed.R.Civ.P. 53(c)
 
 
 [5]
 Fed.R.Civ.P. 61 provides as follows:
 No error in either the admission or the exclusion of evidence and no error or defect in any ruling or order or in anything done or omitted by the court or by any of the parties is ground for granting a new trial or for setting aside a verdict or for vacating, modifying, or otherwise disturbing a judgment or order, unless refusal to take such action appears to the court inconsistent with substantial justice. The court ... must disregard any error or defect in the proceeding which does not affect the substantial rights of the parties.
 
 
 [6]
 The Second Commission properly excluded testimony of the value of part of the property as a ski resort because evidence in the record demonstrated that such use was neither available nor reasonably probable. Therefore, there was no reason to include that possible usage as part of a unit valuation. See Olson v. United States, 292 U.S. 246, 257 (1934) ("Elements affecting value that depend upon events or combinations of occurrences which, while within the realm of possibility, are not fairly shown to be reasonably probable should be excluded from consideration....")
 
 
 [7]
 Comparable sales are the best evidence of value. United States v. Upper Potomac Properties Corp., 448 F.2d 913, 918 (4th Cir.1971); United States v. Whitehurst, 337 F.2d 765, 775 (4th Cir.1964)
 
 
 [8]
 The burden is on the landowner to show that his suggested "highest and best use" is reasonably probable and that it has a real market value. See United States ex rel. Tennessee Valley Auth. v. Powelson, 319 U.S. 266, 273, 275-76 (1943). Here, evidence in the record demonstrates that the landowner's idea regarding a ski resort was merely "speculation and conjecture." Olson v. United States, 292 U.S. 246, 257 (1934)
 
 
 [9]
 Falling within a range of testimony adduced at the hearing does not provide conclusive support for the Second Commission's calculations. Compare United States v. 452.876 Acres of Land, 667 F.2d 442, 445 (4th Cir.1981) ("The mere falling between those extreme limits does nothing to make understandable the process by which the commission arrived at its determinations of value.") with United States v. Certain Parcels of Land, etc., 384 F.2d 677, 681 (4th Cir.1967) (upholding the total arrived at by the commission in part because it was well within the range of testimony adduced before the commission). However, in this case, the award fell between the range of testimony of the two Government witnesses upon whom the Second Commission primarily relied, which is much more persuasive than merely falling between "the highest appraisal advanced by the landowner and the lowest advanced by the government." 452.876 Acres of Land, 667 F.2d at 445
 
 
 [10]
 The 452.876 Acres of Land court noted, in dicta, certain elements which would help disclose the path followed by a commission in determining an award. Many of those elements are found in the Second Commission's report in this case, including: an outline of the testimony of every witness and before and after valuations, rejection of the testimony of several landowner's witnesses, and acceptance of the testimony of certain Government witnesses. See 452.876 Acres of Land, 667 F.2d at 444-45 n. 10 (quoting Morgan v. United States, 356 F.2d 17, 23 (8th Cir.1966))
 
 
 [1]
 It is well-established that district courts must use great caution in presiding over land condemnation actions. The primary reason for such caution is the involuntary nature of the proceeding to which the landowner is subjected. More particularly, circuit courts have been willing to reverse district courts where the impartiality of the court is questioned, especially when no cautionary instruction is given. See, e.g., United States v. 158.76 Acres of Land, 298 F.2d 559, 561 (2d Cir.1962) (district court's "reference to inflation of the dollar was a prejudicial invitation to the jury to be generous to the condemnee"); United States v. Ham, 187 F.2d 265, 267 (8th Cir.1951) (district court's remarks favoring the landowner were reversible error since "remarks and conduct of the judge presiding in the trial or assessment of damages before a jury in condemnation cases should be such as will promote a fair and impartial trial"); Chapman v. United States, 169 F.2d 641, 644 (10th Cir.) (district court's reference to amount of Government's deposit of estimated just compensation was not prejudicial error where court provided cautionary instruction ), cert. denied, 335 U.S. 860 (1948)
 
 
 [2]
 Interestingly, Congress has acknowledged the human nature of judges in this same context of being affected by the knowledge of prior pecuniary awards. In districts where arbitration is utilized as an alternative dispute resolution, arbitration awards are sealed by local rule and "shall not be made known to any judge who might be assigned to the case." 28 U.S.C. Sec. 654(b)